Ruffin, C. J.
 

 The rule laid down by his Honor seems to be a very rigid construction of the terms ‘ in his presence,” which are used in the act; but it is in conformity with the cases hitherto decided on this subject, and, we believe, with the policy and meaning of the statute^ Except in the case of a blind person, “presence seems to have been understood as having the same sense as “within view;” and it follow's, that the thing to be seen, or to be within the power of the party to see, is the very fact Ufsubscribing by the witness. Thus in
 
 Shires
 
 v.
 
 Glascock,
 
 1 Atk. 688, w’hich was the first or one of the first cases that occurred in England under the statute of frauds, it was held that a signing in another room, some yards distant from the testator, was a subscribing in his presence, because he might see it by a broken window : the Court saying, “that the statute required attesting in the presence of the testator, to prevent obtruding another will in the place of the true one;” therefore, that w'hen “the signing is in the view of the testator, it is enough,” though he should not actually sec them signing. That, we take
 
 *221
 
 it, is the true principle of the statute, that a subscribing by the witness must be in such a situation, whether within or without the testator’s room, as will enable the testator, if he will look, to see, that the paper signed by him is the same,which is subscribed by the witness. Therefore, when they subscribe out of the testator’s room, and in such a situation that he cannot see the paper, and for that reason cannot see and know for himself, that it is the true paper, it cannot in any proper sense be said, that the thing was done in his presence. The Statute meant, that he should have evidence of his own senses to the subscribing by the witnesses, just as he should to a signing for him by another by his direction and in his presence; so as to exclude almost the possibility of imposition by substituting one paper for another, without detection by the testator himself upon his own ocular observation, and without exposing him to any risks from undue confidence.
 
 In Doe dem Wright
 
 v.
 
 Mansfield
 
 1 M. & S. 294, Lord Ellenborough lays down this to be the rule ; that, when the devisor cannot see “the act doing,” that is out of his presence. And in the case of
 
 Casson
 
 v.
 
 Dade, 1
 
 Bro. C. C. 99, Lord Tiiurlow held a will to be well executed, which was attested at the window of an attorney’s office, because the testatrix was sitting in her carriage and it was put back to the window of the office, so that she “might see what passed so it is said in the other case of
 
 Davy
 
 v.
 
 Smith,
 
 Salk. 395, that the testator might have seen the witnesses “subscribe their names” if he would, and therefore that the will was well executed. We believe, indeed, that there is no instance, in which a paper has been sustained, where the attestation was under such circumstances, that the testator could not see what was done, so as to protect himself upon his own knowledge against any dishonest substitution by the people, whom he is obliged by the law to select, and depend upon, as subscribing witnesses to his will.
 

 Per Curiam
 

 Judgment affirmed.