Nash, C, J.
 

 "We do not concur with his Honor, in the instructions he gave as to the attestation of the witnesses’ being in' the presence of the deceased. It was,
 
 “
 
 if the witnesses Apple and Jones, were to be believed, the testator could not see from his bed without changing the position in which he was lying, but that by raising his head on his elbow, he might have seen the paper, and the witnesses sign. If, therefore, the jury should believe the testator had the power—the physical ability—to do this, though against the advice of his physician, and imprudent for him to make such an effort, it would be a signing in his presence.”
 

 Before examining the principle laid down by his Honor, it is proper to state a general principle relative to the question before us, and which was not controverted at the bar. If the witnesses to a will attest it in the room where the testator is, it is,,
 
 prima fcteie
 
 evidence that the testator saw them and the paper, at the time of the attestation, and the burthen of proving that he did not, or could not, see it, is thrown upon the caveators. If it is attested in another room, it is
 
 prima facie
 
 evidence that he did not, or could not, see the act. In that case the burthen of proof is upon the propounder, that he did see, or might have seen, both the witnesses and the paper. It was also conceded on both sides, that the word
 
 presence,
 
 as used in the statute, was not confined to “ view” as meaning
 
 “
 
 seeing,” but extended to being face to face with the testator, or not at the time absent from him; otherwise, a blind man under the statute, cotild not make a will, which has been decided in many cases, he may do.
 

 The case was elaborately argued, and the authorities, many in number, brought to our notice. We have carefully
 
 *205
 
 examined them, or such of them as are within our reach, and have come to the conclusion, that the rule as laid down by Powell in his work on Devises, 1 vol. page 98, is the true one. IEs words are,
 
 “
 
 but though the signing be in a room or chamber, immediately contiguous to the room where the testator is, yet the devise will be void unless the testator is in a
 
 position
 
 in which he can, if h,e please, without changing his situation, see the witnesses subscribe.” This position is recognised in
 
 Wright v.
 
 Manifold, 2 Maule and Selwyn 294, and by Mr. Jarman in his treatise on Wills, vol. 1,, page 77. IEs language is, “ and it was not enough that in another part of the same room, the testator might have perceived the witness, if in
 
 his actual position
 
 he could not.” Mr., Best, on Presumptions, uses the same language, vol. 31, page 66, L. Lib. “ So, it has been established by several, cases, that where the will has been signed by the witnesses in such a position that the testator might see them, it is to be presumed that he did see them sign it.
 
 Hut it is different when
 
 the witnesses attest the will in an adjoining room,,
 
 under such
 
 circumstances, that the testator could not, fromhis. position, see them.”
 
 Position
 
 and situation, so far as they relate to matter, are indifferently used by lexicographers as synonymous terms, i. e., “ the state of being placed,” “
 
 posturef-r-vide
 
 Worcester’s Diet.
 

 The case in^í Maulé & Selwyn is, upon this point a very strong one. There, the testator was in bed in a room, from one part of which, he might, by inclining his head into the passage, have seen the witnesses attest the will,
 
 but not in the situation
 
 in which he was. This was decided not to be a good attestation. The case of
 
 Graham
 
 v. Graham, 10 Ire. Rep. 219, is a strong one, confirmatory of the view we are taking of the principle under consideration. There the testator was lying in bed, very sick. After the will was .signed, the witnesses took it into an adjoining room, where it was attested. It was proved that the testator, as he was lying in bed, could, by turning his head, and looking around the side of the door, see the backs of the witnesses as they sat at the chest, writing, hut ho could not see their faces, arms or hands, or the paper
 
 *206
 
 on which, they wrote. It was decided that the attestation was not in his presence.
 

 If it be true that the law requires the attestation to be in the presence of the testator, to protect him from a fraudulent substitution of another paper for his will, then, it is necessary for him to be in such a situation, that he may see the paper, as well as see the witnesses subscribe their names. The decision is completely within the cases decided both in England and in this country. The bodies of the witnesses as effectually shut out the view of the testator, as the partition-wall
 
 did.
 
 In the case before us, all the witnesses agree that the testator was, at the time, very ill, and from his then position, he could see neither the attesting witnesses nor the paper. Two of them said, that the bed in which he lay was in such a position, that the testator by raising his head on his elbow, might have seen the paper, and the witnesses subscribe their names. The attendant physician stated that, a day or two before, in attempting to get out of bed, the testator fainted, and he directed him not to make such an attempt again; and if he had strength to raise himself on his elbow, the attempt to do so might have endangered his health and his life. His Honor’s instruction was, that if he had physical ability, and by raising his head upon his elbow, might, from that position, have seen the witnesses and the paper,—•tinjjgh imprudent, and against the opinion of his physician—the attestation was in his presence. The charge conceded that, from tire position in which the testator' lay in his bed, he could see neither the witnesses nor the paper, and that a change of his position was necessary to enable him to do so. This instruction is not in accordance with the cases herein referred to. But his Hon- or went a step further, and throws out of view entirely the opinion of the medical attendant. The law makes no such requisition upon a testator. It does not require him to risk his life to see that the witnesses signed the paper, or to see the paper. If it were required for the testator to alter his position, from a prostrate to a reclining one, where will you stop ? From a reclining to an upright one may be required
 
 *207
 
 ■when that position is necessary to enable the testator to see the attestation, or it may be required of him to get out of bed for that purpose. If mere physical ability to put himself in the position where he may see, be the test, there can be no stopping place.
 

 . In reply to this idea, it was forcibly put: suppose when the witnesses retire to an adjoining room, a ruffian, or some person interested in having the will attested, stands by the sick man’s bed with a bludgeon, and prevents him from altering his position so that he could see, would an attestation under such circumstances be a sufficient one? No, certainly not; and why? because the testator was in fear of -his life. Was not the testator here restrained by the same cause ?
 

 Per Curiam.
 

 Judgment reversed, and a
 
 venire de novo
 
 awarded.