SARAH BURNEY, SOPHIA D. EVANS, EMELINE F. KING v. EDNA ALLEN, HENRY NATHAN ALLEN and A. H. McNEILL, Executor of Henry Allen.

(Decided November 28, 1899.)

*Issue Devisavit Vel Non—Witnessing the Will—The Code, Sec. 2136.*

1. The deceased must actually have seen, or have been in a position to see, not only the witness, but the paper writing itself, at the time the witnesses signed the same; if the jury should believe that he did not see the paper writing at the time the witnesses signed it, they should answer the issue, No.  *Graham v. Graham*, 32 N. C., 219.

2. There is nothing in the statute, Code, sec. 2136, which requires that the decedent shall request the witnesses to subscribe; the request may be implied from the testator's conduct, or it may be made by another, in the presence of the testator, with his acquiescence and knowledge of what is going on.

IN THE MATTER of the will of Henry Allen. Issue of *devisavit vel non,* tried before *Robinson, J.,* at the Superior Court of BLADEN County, Spring Term, 1899.

The instructions of his Honor, excepted to by propounders are stated in the opinion. The jury found against the will; judgment accordingly; appeal by propounders.

*Messrs. C. C. Lyon,* and *Jones & Stewart,* for appellant.
*Mr. R. O. Burton,* for appellees.

MONTGOMERY, J. Nathan Jones, one of the subscribing witnesses to the script which purports to be the last will and testament of the decedent Henry Allen, testified that he subscribed it in the presence of the decedent and at his request, and in the presnce of W. F. Devane, the other subscribing witness; and that Devane also subscribed it in the presence of the decedent and at his request. Devane testified as follows:

"I was witness to Henry Allen's will; I signed it in the presence of the testator, Nathan Jones, and A. M. McNeill. Emma Jones came for me and I went to Allen's house; Emma Jones is sister to widow Allen. When I went don't recollect that Henry Allen spoke to me; I don't think he spoke to me at all. I saw him when he signed the will; he was lying flat on his back when he signed it. Allen made his mark; I don't know what I signed; I asked McNeill to let me read it, but he said it was not necessary. I do not know whether Allen could see me when he signed it or not; he could see me, but don't think he could see the paper; he was on the bed in the east corner of the room, and I was at the west corner of the same room, at a table; I was standing with my side or back to him, I don't know which; I am satisfied that he could not see the paper writing at the time I signed it, but he could see me."

A. M. McNeill testified: "Allen was very sick and suf-
fered greatly; he was on his bed; I wrote his name and he
made his mark to the paper writing; I don't know whether
his eyes were open or not; I don't know the condition of his
mind; he could have seen the parties when they signed the
paper as witnesses, but could not see the paper. Allen did-
not ask anyone to sign it. I wrote his will at his dictation."

The following issue was submitted to the jury: "Is the
paper writing or any part thereof the last will and testament
of Henry Allen?"

An exception was made by the defendants, the propound-
ers, to that part of the charge of the Court which is in the
following words:

"That the deceased, Allen, must actually have seen, or have
been in a position to see, not only the witnesses but the paper
writing itself, at the time the witnesses signed the same, and
that if the jury should believe that he did not see the paper
writing at the time the witnesses signed it, they should
answer the issue, 'No.' "

The instruction was in harmony with the decision of this
Court made in the case of *Graham v. Graham,* 32 N. C., 219.
In that case it appeared that the decedent was very sick and
lying in bed at the time the paper writing propounded as the
will of the decedent was alleged to have been subscribed by
the witness; the witnesses withdrew into another room, and
there, at a large chest, signed their names; the testator as he
was lying in bed could, by turning his head and looking
around the side of the door between the rooms, have seen the
backs of the witnesses as they sat at the chest writing, but he
could not have seen their faces, arms or hands, or the paper
on which they wrote, a view of those being obstructed by the
partition wall. After the witnesses had signed, they went
back, with the will, into the room where the decedent was and

informed him that they had witnessed it, and he asked one of the persons present to take charge of it.    Upon that evidence the Court directed the jury that "though the testator could have seen enough of the persons of the witnesses while they were subscribing the will to enable him to recognize them, yet if he could not have seen what was going on whilst they were in the act of attestation, the paper was not properly executed and attested."    And this Court, RUFFIN, C. J., delivering the opinion, in reviewing that instruction, declared that while it was a rigid construction of the terms "in his presence" which were used in the act, yet that it was in conformity with the cases theretofore decided on that subject, and that it was consonant with the policy and meaning of the statute.    In that opinion, the true principle of the statute was settled to be "that a subscribing by the witnesses must be in such a situation, whether within or without the testator's room, as will enable the testator, if he will look, to see that the paper signed by him is the same which is subscribed by the witnesses. . . . . .    The statute meant that he should have evidence of his own senses to the subscribing by the witnesses just as he should to a signing for him by another by his direction and in his presence, so as to exclude almost the possibility of imposition by substituting one paper for another without detection by the testator himself upon his own ocular observations and without exposing him to any risks from undue confidence;" and the opinion concludes in this language:    "We believe, indeed, that there is no instance in which a paper has been sustained where the attestation was under such circumstances that the testator could not see what was done so as to protect himself upon his own knowledge against any dishonest substitution by the people whom he is obliged by the law to select and depend upon as subscribing witnesses to his will."

In the next volume of our Reports, 33 N. C., 632, in the case of *Bynum v. Bynum,* the Court, with its personnel unchanged, and the same Judge delivering the opinion, reversed the judgment below because his Honor instructed the jury that "as to the formal execution of the script it was not necessary it should be proved that the party deceased saw the paper at the time it was subscribed by the witnesses; but it was necessary she should be in such a situation that she could see it if she wished; and that, if the jury believed she could not see it at the time, it was not subscribed in her presence within the meaning of the law." In that case, the decedent was raised up in bed and in that position she signed the script and then laid down. The witnesses then subscribed their names in the same room and within two or three feet of the decedent, but the witnesses said that they were not certain whether, from the position in which she was lying, she could see the paper at the time it was being subscribed, and that they thought another paper might have been substituted for the one she signed without her knowing it. In the discussion of that case the Court, without in so many words overruling the case of *Graham v. Graham, supra,* adopted an entirely different course of reasoning, and arrived at an entirely different conclusion from the principle announced in the last-mentioned case.

In *Bynum v. Bynum, supra,* it is held substantially that, provided the subscribing by the witnesses is done in the same room, "openly and without any clandestine appearance about it," the attestation would be good, whether the decedent could actually see the paper or not. So, too, the declaration in *Graham v. Graham, supra,* that the testator should have evidence of his own senses, that is the power to look and see from his present position if he wished to do so, so as to exclude "almost the possibility of imposition by substituting one

paper for another, without detection by the testator upon his own ocular observation, and without exposing him to any risks from undue confidence," is substituted in the case of *Bynum v. Bynum* by the delcaration, "It is not therefore the feasibility of obtaining another paper which will avoid the attestation when all passes in the same room so that the party has opportunity of watching for him or herself; for under those circumstances the attestation is *prima facie* good."

In *Jones v. Tuck,* 48 N. C., 202, the principle enunciated in *Graham v. Graham, supra,* was followed fully, and that case was cited as authority for the decision in *Jones v. Tuck.*

In *Cornelius v. Cornelius,* 52 N. C., 593, the Court instructed the jury that "if they believed that the attestation was made by the subscribing witnesses in the room in which the deceased was lying and in such a situation as by turning his head in the manner described by them he could see the paper writing at the time of the attestation, and that he had the ability to do so, there was an attestation in his presence; it was an attestation in his presence as required by the Act of Assembly." This Court said, in reviewing that case, that, "after reviewing the authorities upon this point, we think that the strictest interpretation of the law has gone no further than to require that the testator should be in a position and have power without a removal of his person to see what was done. It is not necessary for him, in point of fact to see." The Court also referred to the opinion in *Bynum v. Bynum, supra,* where it was held "that the attestation being done openly and without any clandestine appearance about it, in the same room with the testatrix, and within two or three feet of her when she had her senses and nothing intervened between her and the witnesses, is good under the statute. It was done both literally and substantially in her presence." But the Court, it seems to us, clearly showed a

mistrust of that position, as is shown by the following language: "There are authorities going to the extent of holding that the transaction being openly done, there can be no question of *presence* where the parties are all in the same room." Best on Presumptions, 83. But however this may be, it is clear upon authority, if it be affirmatively established that the testator *might* have seen, the attestation is good. Powell on Devises, 96; *Tod v. Earl of Winchelsea,* 12 E. C. L. Rep., 227. And, too, in *Cornelius v. Cornelius, supra,* the doctrine laid down in *Jones v. Tuck, supra,* was not questioned, for the Court said there: "We are not disturbing at all the case of *Jones v. Tuck,* 3 Jones, 202, (48 N. C., 202), to which our attention has been called. In that case it appeared that the testator could not have turned himself so as to have seen the attesting witnesses subscribe without danger, and acting contrary to the advice of the physician. In the case before us the turning of the head would have sufficed to enable the testator to see, and that according to the testimony he could do without pain or difficulty."

Upon a review of these cases, we are of the opinion that there was no error in the instruction of his Honor which we have been considering, and that the principle announced in *Graham v. Graham, supra,* is the correct one. The decedent must be in such a situation—such a position—as will enable him, if he will look, to see the paper writing which he has signed as it is being subscribed by the witnesses; he must have the opportunity through the evidence of ocular observation to see the attestation of the paper from the position or situation in which he is, if he will look, and this so as to exclude the almost impossibility of a substitution of the paper which he has signed with another by some other person.

In the case before us, it does not appear whether the decedent was able to turn his head to one side or not. Two of the

witnesses said that if he had turned his head to one side he could have seen the paper.   If he could have done so, without risk or danger, or not contrary to his physician's advice, and was of testamentary capacity (and there is no proof before us to the contrary), then there was a compliance with the statute in reference to the attestation.   *Cornelius v. Cornelius, supra.*   But even if he was of testamentary capacity, and there was no fraud or undue influence, yet if he was unable to partly turn his head so that he might look and see the paper writing as it was being subscribed, the attestation was not according to the requirements of the statute.

The Court further instructed the jury "that the deceased must have actually requested the witnesses to sign the paper writing as witnesses, and if the jury should believe from the evidence that he did not so request them or either of them, then the paper writing was not properly executed as a will, and they should answer said issue, 'No.'"   We think the instruction was given in language too broad, and that it was, therefore, erroneous.   There is nothing in the statute, Code, sec. 2136, which requires that the decedent shall ask or request the witnesses to subscribe, and we can see no reason why the draughtsman of the will, or any other person, in the presence of the testator and with his acquiescence and approval and with a clear knowledge of what is going on, should not make the request of the witnesses to sign the script.   Nor can we see any good reason why the request should not be implied from the testator's conduct, or well-understood signs.   Such implied requests have been frequently held by the courts to be sufficient.   Am. & Eng. Enc. of Law, Vol. 29, p. 205, and cases there cited.   In New York the statute requires that the witnesses must sign at the request of the testator, but it was held in *Gilbert v. Knox,* 52 N. Y., 125, that the words of request or acknowledgment may proceed from another, and

will be regarded as those of the testator where the circumstances show that he adopted them, and that the party using them in his presence was acting for him with his assent. In *Peck v. Cary,* 27 N. Y., 9, the draughtsman of the will in the presence of the testator requested the witnesses to witness the will, and they thereupon signed it, and it was held to have been done at the request of the testator. There was error in the instruction of his Honor, which we have last discussed.

Error.

FURCHES, J., concurring in the judgment of the Court, but not in the conclusion arrived at, in discussing the first proposition:

As the case goes back for a new trial, he will not enter into a discussion of that question now, further than to say that the opinions in *Bynum v. Bynum* and *Cornelius v. Cornelius* carry the doctrine of "being signed in the presence of the testator" as far as he is willing to go.

Something must be left to personal confidence. Were this not so, neither a blind man nor an illiterate man could make a will. Though an illiterate man may see the witnesses sign the paper he has signed with a cross mark, yet he only knows it is his will because he has confidence in the party who wrote it and read it to him.

FAIRCLOTH, C. J. I concur in Justice FURCHES' view.