In re Herring's Will.

## In re the Will of W. I. Herring.

(Filed 31 March, 1910.)

**1. Issues—Form and Number Submitted—Discretion of Court.**

The number and form of issues is in the discretion of the court, and if every phase of the contention could have been and was presented under the issues submitted they will be sustained on appeal; and when the judge accordingly adds other issues tending to elucidate the case after it has been submitted, in addition to the usual issue, it is not error, but in the line of his duty. Revisal, sec. 614.

**2. Wills—Witnesses—Signed—Presence of Testator.**

It is not necessary to the validity of a will that the maker should sign his name thereto in the presence of the witnesses, and thus acknowledge his signature. This latter may be done by the testator's acts and conduct as well as by his words.

**3. Same—Questions for Jury.**

When there is evidence that the testator's attorney wrote the paper, probated as the last will and testament, submitted it to the testator, who approved it and sent the attorney to procure the witnesses, who soon after came and signed same as witnesses near the name of the testator appearing thereon, while it was upon a table near which the testator sat looking on, the attorney remarking at the time to the witnesses and to the testator, "I have brought the witnesses to the will," it is sufficient upon the question of acknowledgment to take the case to the jury.

**4. Wills—Witnesses—Request—Attorney and Client—Agency.**

When an attorney is sent out by the testator to procure witnesses to his will, who appear before the testator and sign it, it is not necessary to the validity of the will that the testator personally request the witnesses to sign, if the attorney, acting under the instruction of the testator, had so requested them previously to their appearing for the purpose.

**5. Issues—No Evidence as to One—Instructions.**

Upon the question of *devisavit vel non*, issues were properly submitted, (1) as to whether the testator signed the will according to law; (2) as to the mental capacity of the testator to make a will. There was a third issue as to fraud and undue influence, upon which there was no sufficient evidence, and a fourth issue as to whether the paper-writing, etc., was the last will and testament: *Held*, no error for the judge to charge that if the first two issues were answered "Yes," to answer the third issue "No," and then to answer the fourth issue "Yes."

**6. Wills—Acknowledgment—In Hearing of Witness.**

A prayer for instruction, in proceedings to *caveat* a will, that it was necessary to a valid acknowledgment of a will that each of the witnesses should hear it, is properly refused. Revisal, sec. 3113.

Brown, J., concurring in result; Walker, J., concurs in the concurring opinion.

IN RE HERRING'S WILL.

APPEAL from *W. R. Allen, J.*, at June Term, 1909, of LENOIR. The facts are stated in the opinion.

*Rouse & Land, Aycock & Winston, Rountree & Carr*, and *Wooten & Wooten* for caveators.
*Simmons, Ward & Allen*, and *Varser and Dawson*, contra.

CLARK, C. J. This is an issue of *devisavit vel non*. The grounds alleged by the caveators, as set out in their brief, were non-execution, mental incapacity and undue influence. The court at first submitted one issue: "Is the paper-writing propounded by T. J. Herring and others, and every part thereof, the last will and testament of William I. Herring, deceased?"

After the case had been submitted to the jury the court of its own motion added the following three issues:

1. Was the paper-writing offered for probate as the last will and testament of W. I. Herring, signed and executed according to law?

2. If so, did the said Herring have the mental capacity to make a will?

3. If so, was the execution of said paper-writing procured by undue influence?

To the addition of these issues the caveators excepted.

It is settled by numerous and uniform decisions that "the number and form of issues rest in the discretion of the court, if every phase of the contention could have been and was presented." *Patterson v. Mills*, 121 N. C., 266; *Rittenhouse v. R. R.*, 120 N. C., 544; *Humphrey v. Church*, 109 N. C., 132; *Denmark v. R. R.*, 107 N. C., 185. In *Deaver v. Deaver*, 137 N. C., 246, *Walker, J.*, thus sums up the result of our decisions: "It is not material in what form issues are submitted to the jury, provided they are germane to the subject of the controversy and each party has a fair opportunity to present his version of the facts and his view of the law, so that the case, as to all parties, can be tried on the merits. *Warehouse Co. v. Ozment*, 132 N. C., 839." This has been followed in numerous cases since, among them *Lance v. Rumbough*, 150 N. C., 25; *Bank v. Insurance Co., id.*, 775. The issue first submitted is the usual one in such cases, but is not required by any statute or rule of practice, and the presiding judge was within the scope, not only of his authority, but of his duty, in submitting the additional issues, if he thought it would tend to make easier to the jury the elucidation of the facts. Rev., 614; *R. R. v. Stroud*, 132 N. C., 416; *Springs v. Scott, ib.*, 551.

It was in evidence that G. E. Kornegay and W. D. Raynor

subscribed their names as witnesses in the immediate presence of the testator and of each other, but that he did not sign it in their presence. His Honor properly instructed the jury that it was "Necessary that he should either sign his name in the presence of witnesses or should acknowledge his signature thereto in their presence. If from the evidence in this case you do not find that he signed it or did not acknowledge it in their presence, then you should find that the paper-writing is not the last will and testament of W. I. Herring. It is not necessary, however, that this acknowledgment be made in words. The maker of a will can make an acknowledgment of his signature by acts and conduct as well as by words, and if you find that there was such acknowledgment, that will be sufficient acknowledgment under the law. It must also be witnessed in the presence of the party making the will, and he must either see the witnesses sign it or he must be in a position to see them sign it, and to see if they are signing the paper-writing that he signed. If you find from the greater weight of the evidence in this case that witnesses were in his presence, and if you further find that he was in a position that he could see them sign it and know that they were signing the paper-writing which he had signed, that would be a sufficient signing in the presence of the party making the will. They must also sign as witnesses at his request. It is not necessary, however, that he should make the request himself. If he authorizes some one else to get witnesses, and ask them to sign, then the party that he sends out will act as agent, and a request made by said person would be the request of the party signing the will." This is a clear and accurate statement of the law applicable. *Burney v. Allen,* 125 N. C., 314.

G. E. Kornegay testified that he signed the paper-writing as a witness; that Mr. Isler came to his store and asked him to go to his law office for the purpose of witnessing the will of Mr. W. I. Herring; that he went up to the office, and the other subscribing witness, Mr. Raynor, Mr. Herring and Mr. Isler, were present; that Mr. Herring acknowledged that he had signed the paper-writing, and he signed it in his presence; that Mr. Herring was just in front of him, across the table, and saw him sign.

Mr. W. D. Raynor testified that Mr. Isler came to him and asked him to go to his office to witness Mr. W. I. Herring's will; that he went there and found Mr. G. E. Kornegay there, Mr. Herring and Mr. Isler; that Mr. Herring was sitting in front of him, on the other side of the desk, and saw him when he signed the paper-writing as a witness; that Mr. Herring,

Mr. Kornegay, Mr. Isler and himself were all present in the room at the time, but that, so far as he could remember, nothing was said at that time as to what the paper was.

Mr. Isler testified that Mr. Herring came to him to write his will; that he took a memorandum of its provisions; that he wrote it; that Mr. Herring came again and .took the paper-writing with him to examine it; that he afterwards brought it back and he said it was all right; that Mr. Herring asked him to get the witnesses, and he got Mr. Kornegay and Mr. Raynor to come to his office for that purpose; that after they came he said to them, and said to Mr. Herring, "I have brought witnesses to the will," and that Mr. Herring said, in the presence of Kornegay and Raynor, that it was his will.

His Honor arrayed the contention of both parties and charged the law correctly, as above stated. The jury found in response to the first and second issues that the paper-writing was signed and executed according to law, and that Herring had mental capacity to make a will. His Honor further instructed the jury that if it should answer these two issues "Yes," they should answer the third issue "No." This was correct, for there was no evidence of undue influence in procuring the execution of the will fit to go to the jury. His Honor also correctly told the jury that if they answered the first and second issues "Yes," to answer the fourth or original issue "Yes," this being the result necessarily of the finding upon the other three issues.

The caveators insist strenuously that the court should have given their sixth prayer for instructions: "An acknowledgment, in order to be effective, must be in such a manner as to enable each of the witnesses to hear it, and, moreover, it must be actually heard by each of the witnesses, else it is no acknowledgment as to the one who does not hear it." The next two exceptions are for a refusal to give two other prayers to same effect, with some variation in the language, but to the same purport, that the acknowledgment must be actually heard by both witnesses.

Our statute makes no such requirement. Rev., 3113. It simply provides that the will must be signed by the testator, or by some one in his presence and by his direction, "and subscribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the said estate, except as hereinafter provided." There is no requirement that the testator shall sign in the presence of the witnesses nor acknowledge it in their presence. As his Honor told the jury, the acknowledgment need not be made in words, but the jury can find that there was an acknowledgment as an infer-

ence from his acts and words. Mr. Isler testified that he requested the witnesses to go to his office and sign this paper, acting for Mr. Herring, and he was corroborated by both witnesses. If the jury believed. this evidence, the witnesses signed at the request of Mr. Herring and in his presence. There was not one scintilla of· evidence that another paper had been surreptitiously substituted for the will before it was subscribed by the witnesses, or denying the genuineness of Herring's signature. It was not error to refuse the charge·upon a supposition not sustained by any evidence. *In re Burns' Will,* 121 N. C., 336.

There are other exceptions, but they require no discussion. In the interesting supplementary brief filed by Mr. Rountree he demonstrates by citations from authorities upon the civil law and the common law, and, also, by reference to the Code of Napoleon, that the power to devise property by a last will and testament exists only by statute law, which must therefore be strictly followed, and that such right may at any time be modified or abrogated. This Court has heretofore expressed the same conclusion, *Hodges v. Lipscomb,* 128 N. C., 57.

No error.

Brown, J., *concurring:* I assent fully to the opinion of the Court, but desire to express my views more at length upon the principal question relating to the sufficiency of the evidence as to the execution of the will. The will is attested by two witnesses, George E. Kornegay and W. D. Raynor, both of whom were examined on the trial.

There is no question made as to the sufficiency of Kornegay's evidence, who testified to every essential fact, and particularly to the actual acknowledgment in words by the testator of his signature to the will. But it is contended that according to the testimony of the other witness, Raynor, he did not see the testator sign, nor was there any acknowledgment of his signature. According to Raynor's evidence, there was no acknowledgment in words.

Assuming that every fact essential to be proven in order to establish the legal execution of a will must be testified to by both of the subscribing witnesses, if they are living and examined on the trial of an issue of. *devisavit vel non,* I think the requirements of·the statute have been substantially met. I think that the sufficiency of the acknowledgment of execution made to the witnesses to the will does not depend upon the words used by the testator. If that were not true, a dumb person must always sign in their presence and could not acknowledge his own signature.

Following the ancient aphorism, that acts sometimes speak louder than words, I think that the acknowledgment may be manifested by the conduct of the testator as well as by his language, and that anything which amounts in common understanding and fair construction to an acknowledgment that the instrument is his will or the signature is his signature, is sufficient to go to the jury as legal evidence of an acknowledgment, although the witness did not see the testator affix his name to the paper.

Of course, this is governed generally by local statutes, but our statute is framed upon the English statute of frauds, as are the statutes of many other States of this Union.

While this Court has long since declared that each witness must depose to the signing or acknowledgment and to every other material fact necessary to prove execution (*Elbeck v. Granbery,* 3 N. C., 233), it has not, so far as I can find, defined how an acknowledgment can be made other than by the words of the testator. It has said, in the above case, that if the paper lie at a distance on a table he may acknowledge it without seeing it, although, as subsequently held, he must be in a position to see the paper-writing itself at the time the witnesses affix their signatures to it. *Graham v. Graham,* 32 N. C., 219; *Burney v. Allen,* 125 N. C., 315.

. In States, like ours, where the statute is similar to the statute of frauds, the decisions of the English courts are justly esteemed as authority, and they hold that an acknowledgment of a will may be manifested by the acts and conduct of the testator and the circumstances surrounding him at the time the witnesses attest the same, and that the express, verbal acknowledgment by the testator of a visibly apparent signature is unnecessary.

In *Blake v. Knight,* 7 Eng. Eccles. (3 Curteis), p. 515, it is held "that positive affirmative evidence, by the subscribing witnesses, of the fact of signing or the acknowledgment of the signature by the testator in their presence, is not absolutely essential to the validity of a will; that the court may presume due execution by a testator upon the circumstances." In *Keigwin v. Keigwin,* same volume of Reports, p. 519, *Sir Herbert Jenner Fust* says: "The question comes to this, whether this will has been duly executed according to the requisites of the statute. The deceased did produce this paper, having her signature affixed to it at the time, to the two witnesses present at the same time, and the two witnesses did attest it in her presence. Was this a sufficient acknowledgment? I am clearly of opinion that it was. It is not necessary that the party should

say in express terms, 'That is my signature'; it is sufficient if it clearly appears that the signature was existent on the will when she produced it to the witnesses, when they did, at her request, subscribe the will. On these circumstances I hold that this paper has been sufficiently executed." See, also, *Ellis v. Smith,* 1 Vesey, Jr., 11.

The English cases are numerous and sustain the position that acknowledgment of the testator's signature, existent on the will at time of attestation, may be inferred from circumstances. They are collected in 30 Am. and Eng., p. 589, note 7.

This rule is supported by reputable authority in this country. *Nickerson v. Buck,* 66 Mass., 332, in which it is held that an acknowledgment may be by acts as well as by words. The Court says: "But the adjudicated cases go further, and hold that the actual signature by the testator may be made known to the witness in other modes than by an express declaration to the witness that the will is his. Any act or declaration that carries by implication an averment of such fact is equally effectual."

In Illinois it is held that the statute does not require that acknowledgment that the instrument is his will be made by the testator in words or by means of language; any act which indicates the same thing with unmistakable certainty will answer as well. *Allison v. Allison,* 46 Ill., 61; *Turner v. Cook,* 36 Ind., 129; *Dewey v. Dewey,* 35 Am. Dec., 367; *Canada's Appeal,* 47 Conn., 461; *Hogan v. Grovenor,* 43 Am. Dec., 415. In this last case the Supreme Judicial Court of Massachusetts says: "The tendency of the later cases, both in England and this country, has been to give the words of the statute their simple meaning: that a signing by the witnesses, in the testator's presence, to a paper acknowledged by him, in some satisfactory manner, to be his, is a sufficient compliance with the terms of the statute. It meets its provisions, it identifies the paper executed, it shows it to be his."

Other American cases are cited in 30 Am. and Eng., p. 590.

There is one case only, so far as I can discover, which tends to support the contention of the caveators upon this proposition, and that is *Luper v. Werts,* 19 Oregon, 122, which holds that the acknowledgment cannot be inferred from the mere silence of the testator. I am not prepared to say that it always can. It should depend upon all the circumstances. But the force of that case is not only weakened by a very strong dissenting opinion, but the decision appears to be clearly based upon the Oregon Code, which defines a subscribing witness to be "one who sees a writing executed, or *hears* it acknowledged, and at the

request of the party thereupon signs his name as a witness."
Nevertheless, *Lord, J.,* dissenting, says, with great force: "When
I see a man's name to a paper document, and he is present, and
no one else except the scrivener, and I am there to witness ·it,
and, when I do so, he looks on, but says nothing, is not his
acquiescence, under the circumstances, an acknowledgment to
me that the will and signature are his own?"

The opinion of the Court, nevertheless, recognizes the rule as
I have stated it, that the acknowledgment may be manifested by
acts and circumstances as well as words; but thinks the doctrine
of inferential evidence has been extended too far by the Massa-
chusetts Court.

In considering this question, it must be borne in mind that all
the evidence of the circumstances surrounding the testator need
not come exclusively from the attesting witnesses, although cer-
tain essential facts must.

In declaring what the attesting witnesses need not prove,
*Lord Mansfield* said, in *Wyndham v. Chetwynd,* 1 Burr., 421:
"Suppose the witnesses to be honest, how little need they know?
They do not know the contents; they need not be together; they
need not see the testator sign; if he acknowledges his hand it is
sufficient; they need not know it is a will."

To which I may add that, under our law, they need not testify
that they signed at the request of the testator. That is pre-
sumed when they sign in his presence a paper-writing which the
testator has signed as his will and knows to be such.

The evidence in this case, other than Raynor's, if believed,
proves conclusively that Mr. Isler had written the will at the
testator's request and left it open on the desk by which testator
was sitting and where he had evidently just signed it. Isler
stepped out to get witnesses to the will, and told Raynor why
he wanted him. Raynor returned with Isler, and he and Korne-
gay signed as attesting witnesses. The signature of the testator,
according to Raynor's evidence, was plainly visible to witnesses,
both of whom signed their own names at end of attestation
clause, immediately under and close to the signature of the
testator, who at the very time was sitting by the desk plainly
observing both the paper and the witnesses, perfectly conscious
of what they were doing.

Raynor testifies that he signed "as a witness, as I understand,
to his (Herring's) will." He states further, that "Mr. Herring
saw us sign it." There cannot be a doubt that the testator
knew that the two witnesses were attesting his will, which he
had already signed. He not only was close by and saw them
engaged in the act, but knew the purpose of it. In fact, they

were signing at his request, for where persons are requested to witness a will by one who has drafted such will in testator's presence, and with his knowledge, as subscribing witnesses, they must be deemed to have done so at the testator's request. *Peck v. Cary,* 84 Am. Dec., 220, and note; *Allison v. Allison,* 92 Am. Dec., 239, note 1; Underhill on Wills, p. 262.

The primary reason for the presence of witnesses and their attestations in the presence of the testator is to prevent a fraud upon him, and to enable a witness to testify that the testator had put his signature upon the identical paper-writing to which the witness affixed his. Under the circumstances under which this will was executed and attested, and in the manner in which it was done, no fraud could well have been perpetrated.

Mr. Justice WALKER concurs in this opinion.