In the Matter of the Will of M. W. PRIDGEN, Deceased.

(Filed 25 February, 1959.)

1. Wills § 7—

If the subscribing witnesses sign a will in a room adjacent to the room in which testator is lying in bed, but the testator is in a position where he did see or could have seen them subscribe their names, the attestation is in compliance with law, and an instruction to this effect is not error. G.S. 31-3.3.

2. Appeal and Error § 59—

An opinion of the Supreme Court must be read in the light of the factual situation then under consideration.

3. Wills § 22—

The burden of establishing mental incapacity to execute a will is on caveators.

4. Wills § 21b—

An instruction to the effect that mental capacity to execute a will is the capacity of testator to know his relatives and to know and realize that the instrument devised and bequeathed his property to the person therein named, to the exclusion of his relatives, in accordance with his free will and desire, *held* not prejudicial.

5. Appeal and Error § 41—

The exclusion of testimony will not be held prejudicial when the same witness is thereafter permitted to give testimony of the same import.

APPEAL by caveators from *Seawell, J.,* March 1958 Term, of COLUMBUS, docketed and argued as No. 606 at the Fall Term 1958.

M. W. Pridgen, age 77 or 78, died in his home on 19 October 1957.

His distributees and heirs were his widow, two sisters, and eight nephews and nieces. On 24 October the widow offered for probate as her husband's will an attested paper writing dated 9 October 1957. This instrument bequeathed and devised to her all of her husband's property and named her as executrix. The instrument was probated in common form. On the following day one of the sisters filed a caveat. Thereupon the proceeding was transferred to the Superior Court. The widow and seven of the nephews and nieces, who are heirs, filed an answer to the caveat. They asserted the instrument was in fact the last will of M. W. Pridgen, having been duly executed as such.

As determinative of the controversy the court submitted issues which were answered by the jury as follows:

"1. Was the paper writing propounded, dated the 9th day of October, 1957, executed by M. W. Pridgen, according to the formalities of the law required to make a valid last will and testament?

"Answer: YES.

"2. At the time of signing and executing said paper writing did said M. W. Pridgen have sufficient mental capacity to make and execute a valid last will and testament?

"Answer: YES.

"3. Is the said paper writing referred to in Issue No. 1, propounded in this cause, and every part thereof, the last will and testament of M. W. Pridgen, deceased?

"Answer: YES."

Based on the verdict, judgment was entered declaring the instrument to be the last will and testament of M. W. Pridgen and as such probated in solemn form. Caveators excepted and appealed.

*Varser, McIntyre, Henry & Hedgpeth and Burns & Burns for caveator, appellants.*

*Powell & Powell for propounder appellees.*

Rodman, J. The assignments of error raise these questions: (1) Did the court correctly instruct the jury with respect to the formalities necessary to the execution of an attested will; (2) was there error in the charge with respect to mental capacity necessary for a testamentary disposition of property; and (3) was there error in the exclusion of evidence bearing on the first two questions?

Mr. Pridgen was in a hospital in Lumberton from 25 September to 30 September 1957. He had earlier that month spent several days in the Columbus County Hospital. The doctors who examined him in Lumberton testified he had a prostatic condition which was proba-

bly malignant, arteriosclerosis, and an irregular heart. He was bed-ridden in his home from 30 September when he left the Lumberton hospital until his death.

The paper offered for probate was prepared by an attorney in conformity with a message delivered to him by D. R. Nance. Nance, a neighbor, acted at the request of Pridgen. When the will was written, Nance carried it to Pridgen and at his request went for Loren Tart to witness its execution. The other witness was testator's nurse, A. F. Freeman. The instrument was signed on the day it was written.

The evidence touching the execution and subscription of the instrument comes from Tart and Freeman, the subscribing witnesses. Tart testified: "Mr. Pridgen was there in bed. That was his signature on this paper writing, M. W. Pridgen's signature. I have seen the paper writing purporting to be the last will and testament of M. W. Pridgen before. I read that paper to Mr. M. W. Pridgen. After I read that paper to him I asked him if he wanted to sign it, and he said 'yes.' He signed it; he had to be helped to sign it but he had hold of the pen. He signed it in my presence. Mr. Freeman was in the room, Mr. A. S. Freeman. That's my signature, that Loren Tart is my signature. He signed it in the presence of Mr. Freeman. I signed as a witness in the presence of Mr. Freeman. . . . There was a room adjoining the one he was in, and Mr. Freeman and I went to a table there in the adjoining room to witness the paper, to write our names to it. . . . We went to the table to have something to lay it down on to write, that's the table in the adjoining room. . . . Mr. Pridgen was in one room and the table was in the next room adjoining it. . . . Neither Mr. Freeman nor I signed the paper which I have here in the room in which Mr. Pridgen and his bed were . . . I read this paper that was propounded to Mr. Pridgen. When I asked him did he want to sign it, he said 'yes.' Then Mr. Freeman and I went in the adjoining room and signed it on the table, but it was so he could see it in the other room . . ."

Freeman testified: "I was living there in his house at the time he died . . . I was employed by some of them to nurse him. I attended to him while he was sick. I have seen the paper writing purporting to be the last will and testament of Mr. M. W. Pridgen before. The first signature there at the top is Mr. Pridgen's. I saw Mr. Pridgen sign his name to it. That is my name there at the bottom and that's M. W. Pridgen's . . . I signed this paper in the presence of Mr. Pridgen right where Mr. Pridgen could see it . . . Mr. Pridgen was sitting up on the bed when Mr. Tart presented this paper . . . There was a big table just inside the adjoining room that had a television on it

. . . The table I was speaking about signing it on was in another room just inside the door in the corner. That table I was speaking about signing it was just inside the door, it had a television on it. It was in the next room just inside the door and he was right back where he could see it . . . The television was on top of the table where I sat to write my name. It was on a big table right in the corner. That was the table I put the paper on to sign. Mr. Tart wrote his name first, and then I wrote mine."

Estelle Fletcher, one of Pridgen's nieces, prepared a diagram showing the location of the bed which he occupied and various objects in his room and in the adjoining sitting room. She testified: "This indicates his bed. That is the bed in which Mr. Pridgen was sick. This is the opening door there between the bedroom and the living room. The distance from the bed to the door is 3 feet. The distance from the door to the television table is 2 feet and 6 inches. The table had been pulled out away from the corner so he could watch television. The table had been pulled out so he could watch T.V. When the table was pulled out, he could watch it from the bed there and see it all right."

There was testimony on behalf of the caveators from which the jury could find that Pridgen could not have seen the subscribing witnesses at the television table when they signed the paper. There was also evidence on behalf of the caveators from which the jury could find one of the subscribing witnesses had stated they did not write their names at the television table but at another table in the sitting room and that it was impossible for one on the bed to see a person at that table.

G.S. 31-3.3 provides: "(a) An attested written will is a written will signed by the testator and attested by at least two competent witnesses as provided by this section . . . (d) The attesting witnesses must sign the will in the presence of the testator but need not sign in the presence of each other."

The competency of Tart and Freeman to serve as attesting witnesses is not challenged. Caveators contend the evidence is insufficient to support a finding that the paper was signed by the attesting witnesses "in the presence of the testator" and the court erred in defining that phrase.

The court charged: "Our Supreme Court has said in case *In re Will of Willie Bolden*, 150 N.C. 507, and following pages in discussing what is meant by in the presence of, our Court has said that 'actual view is never necessary, but it is sufficient if the party,' in this case Pridgen, the purported testator, 'might see the witnesses

attest though if in a different as well as in the same room. The strictest interpretation of the law has gone no further than to require that the testator should be in a position and have power without removal of his person to see what was done. It is not necessary in fact for him to see. If the testator, the one making the will, is able to see that attestation by the witnesses, it is not material to prove that in fact he did see it, but he must be able to see the witness subscribe the will. Their relative position to him at the time they are subscribing their names as witnesses whether they are in the same room with him or not must be such that he may see them if he thinks proper to do so, for the purpose of the law is not so much to secure signing of the name of witnesses in the actual view of the testator as to afford him an opportunity to detect and prevent the substitution of another will in the place of that which he has signed.' " Caveators make the quoted portion their 64th exception.

The court further charged: "I charge you if you find from the evidence and by its greater weight that Tart and Freeman, the purported subscribing witnesses to the will of M. W. Pridgen, signed their names as subscribing witnesses to the paper writing, that M. W. Pridgen was in a position where he did or could have seen them sign or subscribe their names, this would be a signing in the presence of M. W. Pridgen in compliance with the law. If you find the facts to be so by the greater weight of the evidence." Caveators make this portion of the charge their 65th exception.

Caveators rely on *Jones v. Tuck*, 48 N.C. 202, as authority for their position that the will was not subscribed by the witnesses in testator's presence as required by the statute.

The opinion in that case should be read, like all other opinions, in the light of the factual situation then under consideration. There the evidence was that testator, in an adjoining room, could not have observed the subscription without changing his position, but by raising himself on his elbow could have seen the witnesses sign. This effort would have jeopardized his life.

The court charged that if testator had the physical ability to make this change in position "though against the advice of his physician, and imprudent for him to make such an effort, it would be a signing in his presence." Caveators had requested and the court had refused to charge "that if they should believe that it was not safe for the testator to have made the effort, and that it would have been dangerous for him to have done so, it was not a sufficient signing." Speaking with respect to the charge the Court said: "The charge conceded that, from the position in which the testator lay in his bed, he could

17 — 249

see neither the witnesses nor the paper and that a change of his position was necessary to enable him to do so. This instruction is not in accordance with the cases herein referred to. But his Honor went a step further, and throws out of view entirely the opinion of the medical attendant. The law makes no such requisition upon a testator. It does not require him to risk his life to see that the witnesses signed the paper, or to see the paper."

Dealing with this factual situation the Court says the correct rule is stated in Powell Devises "but though the signing be in a room or chamber, immediately contiguous to the room where the testator is, yet the devise will be void unless the testator is in a *position* in which he can, if he please, without changing his situation, see the witnesses subscribe."

We do not think the rule stated in the case on which caveators rely is at variance with the charge here under consideration. The charge here challenged is, as the court stated, taken from *In re Bowling's Will,* 150 N.C. 507, 64 S.E. 368. The opinion in that case was written by *Justice H. G. Connor,* later selected because of eminent ability by President Taft to serve in another judicial position. Portions of the charge are as noted in the opinion of *Justice Connor,* quotations from other decisions on this question by this Court.

The charge is not, we think, at variance with the conclusion reached in *Jones v. Tuck, supra.* It accords with rulings in *In re Will of Deyton,* 177 N.C. 494, 99 S.E. 424; *In re Snow's Will,* 128 N.C. 100; *Burney v. Allen,* 125 N.C. 314; *Cornelius v. Cornelius,* 52 N.C. 593; *Bynum v. Bynum,* 33 N.C. 632.

This Court held in *In re Allred's Will,* 170 N.C. 153, 86 S.E. 1047, that a blind person could execute an attested will. The case is likewise reported L.R.A. 1916C with an annotation entitled "Wills: when will deemed attested by the witnesses in the presence of the testator." The annotations and notes to that case will show that the charge here challenged not only conforms to previous decisions of this Court but is in accord with the rule as applied by other courts.

The rule given was the correct one for the jury to apply in determining if the witnesses were in the presence of testator at the time they subscribed their names.

A table had been placed so that testator could see television programs. Attestation was on this table which, in the language of one of the subscribing witnesses, was "right where Mr. Pridgen could see it." The evidence measured by the rule is sufficient to support the jury's finding.

Caveators make no claim of fraud or undue influence touching the

execution of the paper writing. It has no validity, they say, because the statute, G.S. 31-1, permits only those of sound mind to make a will, and Pridgen was not, in October 1957, of sound mind.

Touching the question of mental capacity, propounder offered evidence from some of the heirs, neighbors who were frequent visitors in the home, the nurse, and the personal physician for eleven years who was in attendance during the last illness that Pridgen, in their opinion, on the day the paper was signed, had mental capacity to know who his relatives were, what property he owned, whom he wished to own it after his death, that the paper he signed was his will, and its scope and effect.

Caveators offered testimony from Pridgen's sisters, some of his nephews and nieces, the doctors who treated him while in the hospital in Lumberton, and others that he did not have mental capacity to understand what he was doing.

The conflicting testimony presented a question of fact for determination by the jury under appropriate instructions from the court.

The court charged: "Wherever one alleges that the maker did not have sufficient mental capacity to make it, then the burden is upon such person to satisfy the jury by the greater weight of the evidence of the truth of his contention and to overcome the presumption of sanity after the formal execution has been established."

The exception to the charge is not well founded. The court properly placed the burden of establishing lack of mental capacity on the caveators. *In re Will of Franks*, 231 N.C. 252, 56 S.E. 2d 668; *In re Will of York*, 231 N.C. 70, 55 S.E. 2d 791; *In re Will of Brown*, 200 N.C. 440, 157 S.E. 420; *In re Staub's Will*, 172 N.C. 138, 90 S.E. 119.

Caveators assign as error the rule given to the jury to measure mental capacity. The court in its charge stated the rule in various ways, finally summarizing the test in this language; "It is your duty in passing on the mental capacity of M. W. Pridgen to determine with reference to the will in controversy whether when he signed same he had such mental capacity as enabled him to understand the provisions contained in the paper, the extent of the same, and to know that he was giving the property therein bequeathed or devised to the person named therein and that he desired her to have it as written in the paper, to know his relatives and to know and realize that it was his free will and desire that his relatives should not have any property of his other than in the manner devised, or that devised."

The rule which the court gave the jury to ascertain "sound mind" necessary for a valid will is in substance if not verbatim the rule as stated in numerous decisions by this Court. Typical are: *In re Will of*

*York, supra; Carland v. Allison,* 221 N.C. 120, 19 S.E. 2d 245; *In re Will of Efird,* 195 N. C. 76, 141 S.E. 460; *In re Creecy,* 190 N. C. 301, 129 S.E. 822; *In re Craven,* 169 N.C. 561, 86 S.E. 587.

Caveators took numerous exceptions to the exclusion of evidence relating to testator's mental capacity. An examination of the exceptions and assignments of error would seem to indicate that the court sustained the objections for failure of the witness to respond to the questions propounded; but in every instance where the evidence was excluded the witnesses were thereafter permitted to express their opinion that the testator did not have requisite mental capacity. Even if there was error in originally excluding the testimony, the error became harmless when the witness thereafter gave his opinion and the reasons for the opinion.

We have examined each of the assignments of error. We find none which in our opinion would justify a new trial.

No error.