In the matter of the Last Will and Testament of W. S. BALDWIN.

(Filed 13 November, 1907).

**Wills—Attestation—Witnesses—Time of Signing—Presence of Testator.**

> The signing of the will by attesting witnesses, two being required, must be in the presence of the testator. Revisal, sec. 3113. When a witness who had properly signed as such, no other witness signing, had the will copied upon different paper in the absence of the testator, signed the copy, left it at the home of the testator with the original, who afterwards procured the due attestation and signature of the other witness on the copy, both of which were found among the papers of the testator after his death, but the original was destroyed, the copy is not valid as a will, and evidence that the first draft was identical with the copy is incompetent, the first witness having signed before the testator signed, and not in his presence, there being no physical connection between the original and copy, and not upon the same paper as that of the signature of the testator.

ISSUE of *devisavit vel non,* heard by *Moore, J.,* at April Term, 1907, of the Superior Court of MONTGOMERY County.

By agreement, the Court found the facts. From the judgment rendered H. T. Baldwin, one of the propounders, appealed.

Finding of facts:

1. That the propounders, H. T. Baldwin and J. H. Le-Grand, produced in Court a paper-writing purporting to be the last will and testament of W. S. Baldwin, deceased, a copy of which is made a part of this finding:

"STATE OF NORTH CAROLINA—Montgomery County.

"I, W. S. Baldwin, of the county and State above named, being of sound mind and memory, but considering the uncertainty of my earthly existence, do make and declare this my last will and testament, in manner and form following:

"I hereby will the children of my daughter, Dicey Le-Grand, deceased, twenty dollars each; and to the children of D. C. Baldwin, deceased, ten dollars each; and to J. B. Bald-

win, my son, fifteen acres of land, including all the buildings where I now live, after his mother's death, and if he should die without any children, his part to be equally divided between H. T. Baldwin, Rebecca Ewing and Emma LeGrand and their children after them. The remainder of my real estate to be equally divided between H. T. Baldwin, J. B. Baldwin, Rebecca Ewing and Emma LeGrand and their children after them; and for my wife, Charlotte Baldwin, to have her dower .off of each child's part equal, and for her to have all the personal property as long as she shall live, and at her death the same to be equally divided between H. T. Baldwin, J. B. Baldwin, Rebecca Ewing and Emma LeGrand and their children after them.

"I do hereby constitute and appoint my son, H. T. Baldwin, and J. H. LeGrand my lawful executors to all interests and purposes, to execute this, my last will and testament, according to the true intent and meaning of the same, and every part and clause thereof, hereby revoking and declaring utterly void all other wills and testaments by me heretofore made.

"In witness whereof, I have hereunto set my hand and seal, this the 11th day of September, 1907.

"W. S. BALDWIN.    [Seal.]

"Signed, sealed, published and declared by the said W. S. Baldwin to be his last will and testament, in the presence of us, who, at his request and in his presence, do subscribe our names as witnesses thereto.        J. A. COVINGTON,

B. B. BOWLES."

2. That the said witness, J. A. Covington, was called in by the alleged testator, W. S. Baldwin, and, as dictated by the said testator, wrote a paper-writing purporting to be the last will and testament of the alleged testator, wrote the attestation clause and, at the request of the testator and in the presence of the said testator, signed his name as a witness thereto.

*In re* BALDWIN.

No other witness attested this paper-writing. Said W. S. Baldwin signed the paper-writing as his last will in the presence of said J. A. Covington.

3. That the paper-writing purporting to be the last will and testament of the alleged testator, W. S. Baldwin, deceased, as referred to in the second article of this finding of facts, not being on as good quality of paper as the said witness desired to have the same, said J. A. Covington took the said paper-writing, above referred to, to the home of the said witness and there transcribed it on better paper, and at the same time, at his home and in the absence of the alleged testator, wrote out the attestation clause and wrote his name as a witness thereto.

4. That, after making an exact copy of the paper-writing referred to in the second article of this finding, and signing his name thereto as an attesting witness, the said J. A. Covington returned the copy for probate, and also the original copy of the said paper-writing, to the home of the said alleged testator, and, the said W. S. Baldwin being away from home, left them with the wife of the said testator. Said Covington did not see the said paper-writing any more until after the death of said Baldwin, and did not see said Baldwin sign it or hear him acknowledge it.

5. That some time after this the alleged testator brought the copy of the purported will, to-wit, the one offered for probate, to the other witness, B. B. Bowles, and asked him to "witness a paper for him," which the witness did, in the presence of the alleged testator, and the testator asked him to say nothing about it.

6. That the original paper-writing, being the one written at the dictation of the alleged testator and signed by the said alleged testator in the presence of the witness Covington, and witnessed by the said witness Covington at the request of and in the presence of the alleged testator, W. S. Baldwin, deceased, and also the copy of the original paper-writing, being

the one witnessed by the witness B. B. Bowles at the request of and in the presence of the said alleged testator, were both in the possession of the said alleged testator at the time of his death.

7. That both copies of the alleged will were signed by the alleged testator in his own handwriting.

8. That, after the death of the alleged testator, the copy (meaning the one that was on the best paper) was carried to the Clerk of the Superior Court for probate, and the original copy was, at the request or advice of friends, burned by the wife of the alleged testator, then deceased.

9. That the alleged testator, at the time of his signing both paper-writings, was of sound mind and discretion.

10. That the witnesses, J. A. Covington and B. B. Bowles, are men of sufficient knowledge to act as such.

11. That the said paper-writing offered for probate, which purported to be the last will and testament of the said W. S. Baldwin, deceased, appeared on its face to be written and attested in due form.

Upon the foregoing facts the Court is of the opinion that the paper-writing offered for probate is not the last will and testament of W. S. Baldwin, deceased.

It is, therefore, on motion of R. T. Poole, Esq., attorney for the objectors, ordered and adjudged by the Court that the said paper-writing is not the last will and testament of said W. S. Baldwin, deceased, and is not entitled to probate as such, and that this proceeding for the probate of the same be and the same hereby is dismissed.

It is further adjudged that said H. T. Baldwin and J. H. LeGrand, the propounders, pay the costs of this proceeding, to be taxed by the Clerk. FRED MOORE,
*Judge Presiding.*

*J. T. Brittain* and *R. O. Frye* for appellant.
*R. T. Poole* for appellee.

*In re* BALDWIN.

BROWN, J.    Our statute (Revisal, sec. 3113), referring to wills of the character of the paper-writing offered for probate, contains a specific requirement that the will shall be subscribed, in the presence of the testator, by two witnesses at least.

The paper offered by the propounders was never signed by witness Covington in the presence of Baldwin.    It appears that Covington wrote a will for Baldwin, and he and Baldwin signed it in the presence of each other.    There is no finding of fact that such paper had any other witness than Covington. It was destroyed after Baldwin's death.    It was not attached in any way to the paper offered for probate, and had no physical connection with it.    The fact that it is said to be exactly like the paper offered, and that the latter is a copy of the former, will not "mend matters."    In the absence of any sort of physical connection between the two papers, resort cannot be had to parol proof to show a similarity of contents and that they constituted one and the same will.

The paper offered was written by Covington and signed by him as a witness before the testator signed, and not in his presence.    In fact, Covington never saw Baldwin at all after he wrote and attested the paper and left it at the former's residence to be executed by him.    Not only did Covington not sign in the presence of the testator, but his attestation preceded the signing of the maker of the will.

Some authorities hold that everything required to be done by the testator in the execution of a will shall precede in point of time the subscription by the attesting witness, and that, if the signature of the latter precede the signing by the testator, the will is void.    Gardner on Wills, p. 236.    Until the testator has signed, there is no will and nothing to attest.    There are eminent authorities, however, which hold that where the signing of the testator and of the witnesses took place at the same time and constituted one transaction, it is immaterial who signed first.    Gardner, *supra*.    While this is very rea-

sonable, it does not help the propounders, upon the facts as found. Nor does the recognized legal presumption that the testator signed first, since that is rebutted by the admitted facts.

The propounders can take no benefit from the fact that Covington signed the destroyed paper after testator had signed it, in his presence and at his request, although the contents of the two papers may have been identical. That will not help out the probate of the paper offered, for the reason, as we have observed, that there was no physical connection between the two. The authorities all hold that the attestation or subscription by witnesses must be on the same sheet of paper as that which contains the testator's signature, or else upon some paper physically connected with that sheet.

Mr. Schuler says: "Attestation or a subscription by witnesses on a paper detached and separated from the will and the testator's signature, nor affixed in his presence to the paper at the time of execution, fails of compliance with the policy of our law. We may assume it to be void, as otherwise a door must be open to fraud and perjury." Wills, sec. 336 (2d Ed.); *Cox's Will,* 46 N. C., 323. Am. and Eng. Ency. (2d Ed.) says: "An attestation, if not on the same sheet of paper as the signature of the testator, must be on a paper physically connected with that sheet, although no particular mode of fastening the papers together is required." Vol. XXX, p. 603.

The judgment is

Affirmed.