Issue of devisavit vel non as to the last will and testament of D. W. Watson, deceased.
Propounders offered in evidence a paper-writing purporting to be the last will and testament of D. W. Watson, deceased, and to be signed at bottom and sealed by D. W. Watson, deceased, and to be witnessed as follows: "Test: W. I. Everett, W. T. Covington." This paper (74) as in the issue and proceedings below will be referred to as Exhibit A. This being handed to the witness W. T. Covington, he testified thereto as follows: "That D. W. Watson brought this paper, Exhibit A, into my office and told me that it was his will; that he wrote his name signed to the will; "That is my name,' and he asked me to witness it and sign my name as subscribing witness to Exhibit A. I signed my name where it appears on Exhibit A, in his presence. I knew Captain W. I. Everett, and know his handwriting. His name where it appears above mine on Exhibit A is in his own handwriting. W. I. Everett is dead. His name appeared above mine on Exhibit A. I cannot *Page 61 
say whether his name appeared on the paper when I signed or not. I think Mr. Kelly was present when I signed the paper, but I am not positive about that."
Evidence was then offered of the death of W. I. Everett, and that his signature as witness to said will was in his own proper handwriting. Propounders then offered another paper-writing purporting to be an addition to the last will and testament of D. W. Watson of date 11 November, 1911, the same purporting to be signed by him and witnessed by A. W. Porter and W. M. Hale, and said witnesses, being sworn, testified to the due execution of said will and to their signatures as subscribing witnesses, etc. This paper-writing, referred to as Exhibit B, was in form as follows:
NORTH CAROLINA — RICHMOND COUNTY.
I, Daniel W. Watson, of the aforesaid county and State, being of sound mind, do make and declare this addition to my last will and testament, and this addition is in no wise to interfere with former will:
First. I give and devise to my beloved wife, Laura Hinson Watson, one-half acre of land on which is now situated by ginhouse, together with said ginhouse, all machinery, farming implements, and farm produce that may belong to me at the time of my death, that may be on said half-acre of land. The said half-acre of land is situate on the left-hand side of the road leading from my present dwelling to the road from Rockingham to Mrs. Hattie Diggs' place, and is known as the Sand Hill Road. (75)
Second. I hereby constitute and appoint my beloved wife, Laura Hinson Watson, my lawful executrix to all intents and purposes of this addition to my former will, according to the true meaning of the same, but in no wise is my former will to be affected by this addition, but the said will to stand as first intended.
In witness whereof I, the said Daniel W. Watson, do hereunto set my hand and seal, this the 1 November, 1911.
D. W. WATSON [SEAL].
Signed, sealed, published, and declared by the said Daniel W. Watson to be an addition to his last will and testament, in presence of us, who at his request and in his presence (in the presence of each other) do subscribe our names as witnesses thereto. A. W. PORTER. W. M. HALE.
One of the witnesses to this will testified that when the same was executed D. W. Watson said that he had made a will aready [already] and did not want this in any way to interfere with his former will. *Page 62 
Propounders then offered the records of probate court, showing the admission of Exhibit A will to probate on the testimony of W. I. Covington, the death of the witness W. I. Everett, proof that his signature as subscribing witness was in his own handwriting and on proof of the signature to handwriting of D. W. Watson. This, on objection, was excluded by the court, and propounders excepted.
Propounders then offered D. E. Hinson as witness, who testified as follows: "I live in Rockingham. Mrs. Laura Hinson is my sister. She and Mr. Watson have been married something like twelve or thirteen years. I never saw the paper-writing marked Exhibit B but once up to the time of Mr. Watson's death. Exhibit A was exhibited to me at my office at the livery stable. Mr. Watson came in and had this paper all fixed, and said, `Ed, your brother M. T. is dead'; and I said, `Yes; that is right.' He came and gave me this paper that had M. T.'s name on it, and said, `I want you to mark out M. T. and put (76) D. D. there.' I wrote the name and gave it back, and he took it and sealed it up and told me to keep it; that I had a safe place to keep it, and he did not. So I put it in my safe and kept it until he died. I got Exhibit B after Mr. Watson's death. Mr. A. W. Porter told me he had some papers of Mr. Watson's. I told him I would like to get them, and he gave them to me. After Mr. Watson's death I gave the two papers to Major Shaw. He opened them and read them to me, and I found out what they were. Major Shaw brought the papers to the clerk's office. They were probated before the clerk. Mr. Watson put Exhibit A in an envelope."
Issues were submitted to the jury as follows:
1. Is the paper-writing propounded for probate, bearing date 27 January, 1903, purporting to be witnessed by W. I. Everett and W. T. Covington, being "Exhibit A" in evidence, the last will and testament of D. W. Watson, deceased, or any part thereof?
2. Is the paper-writing propounded for probate, bearing date 1 November, 1911, purporting to be witnessed by A. W. Porter and W. M. Hale, being Exhibit B in evidence, the last will and testament of D. W. Watson, deceased?
The court charged the jury that if they believed the testimony to answer the first issue "No."
The jury rendered their verdict, answering first issue "No" and second issue "Yes."
Judgment on the verdict, and plaintiff excepted and appealed.
Under our present law, Revisal, sec. 3113, "A written will with witnesses must have been prepared in the testator's lifetime and signed by him or some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least," etc. Construing this law, the courts have held "that it is not necessary always that the testator should sign the will in the presence of (77) the witnesses; it is sufficient that the will be acknowledged by the testator in their presence, the will being physically present and identified." In re Herring's Will, 152 N.C. 258; Nickerson v. Brick,66 Mass. 332. Nor is it required that the witnesses should subscribe to the will in the presence of each other. In re Herring's Will, supra;Payne v. Payne, 54 Ark. 415; Eulbecks v. Granberry, 3 N.C. 232; Gardner on Wills, p. 217. With these authoritative interpretations in mind, it is always required that in order to a valid written will with witnesses the same should, as stated, be signed by the testator or some other person in his presence and by his direction, and subscribed in his presence by at least two witnesses.
In regard to the proper probate, the method by which these essential facts should be established, the statute, sec. 3127, makes provision as follows: "In case of a written will, with witnesses, on the oath of at least two of the subscribing witnesses, if living; but when any one or more of the subscribing witnesses to such will are dead, or reside out of the State, or cannot after due diligence be found within the State, or are insane or otherwise incompetent to testify, then such proof may be taken of the handwriting, both of the testator and of the witness or witnesses so dead, absent, insane, or incompetent, and also of such other circumstances as will satisfy the clerk of the Superior Court of the genuineness and the due execution of such will. In all cases where the testator executed the will by making his mark, and where any one or more of the subscribing witnesses are dead or reside out of the State, or are insane or otherwise incompetent to testify, it shall not be necessary to prove the handwriting of the testator, but proof of the handwriting of the subscribing witness or witnesses so dead, absent, insane, or incompetent shall be sufficient. The probate of all wills heretofore taken in compliance with the requirements of this section are hereby declared to be valid."
It will thus be noted when any one of the subscribing witnesses survives or is competent to testify, proof may be taken of the handwriting, both of the testator and the other witness or witnesses, and of such other circumstances as shall satisfy the clerk of the Superior (78) Court of the genuineness and the due execution of such will, with *Page 64 
the proviso that when the testator has signed by making his mark, proof of his handwriting is not necessary. According to the express provisions of the law, therefore, whenever the facts indicated have been properly established before the clerk he may adjudge the will to be duly proven and record the same, and, when such testimony is offered on an issue of devisavit vel non, it affords evidence from which the will may be established by the jury, and it is not required, as contended by the caveators, that, in order to a valid probate, the surviving witness should testify that he saw the other witness subscribe his name to the instrument. In Thomas' Will, 111 N.C. 412, one of the authorities relied upon by the caveators to sustain their position, the original will was lost, and, in the endeavor to prove the will, it was shown, apparently without exception, that when the instrument was offered for probate in common form one of the subscribing witnesses had testified to having subscribed the same as witness, and another, who was not a subscribing witness, testified that the signature of the other subscribing witness was in his own proper handwriting. This, with proof of the death of J. W. Thomas, the other subscribing witness, was the entire evidence offered on the issue. There was no evidence offered as to the handwriting of the testatrix, and Associate Justice Avery, delivering the opinion denying probate said: "The propounders failed to produce any witness who had ever seen the signature of Ada W. Thomas to the original will or the signature of either of the witnesses, or that would testify to their genuineness. Indeed, the only evidence offered to show the loss of the original paper was that of D.C. Mangum, who last saw it in possession of the sole legatee and devisee." And in R. R. v. Mining Co., another case to which we were referred by counsel, the Court only held that a certificate of probate in another State, disposing of property in this State, would not suffice here when it did not affirmatively appear that the provisions of our statute had been complied with as to the due execution of a will. Revisal, sec. 3133. The other authorities relied upon were chiefly cases under (79) the old Revised Statutes, where proof in common form was permissible by one of the subscribing witnesses, and it was held that when proof of that character was resorted to, the witness who was examined, if his evidence was set out, should appear to have testified to the proper attestation of the other witness (In re Thomas, supra; Blount v. Patton,9 N.C. 237); but these decisions do not bear on the requirements of the present statute, nor should they be allowed to control the positive provisions of our present law as to the proper probate of a will. While the ruling on this question favors the propounder's position, it *Page 65 
would probably not avail them on this record, because we find no direct evidence admitted by the court as to the handwriting of D. W. Watson and the genuineness of his signature to the will. Such testimony was had before the clerk, on the probate in common form, but this was ruled out by his Honor, and the authorities seem to hold that in the trial of an issue of devisavit vel non, on caveat duly entered, the proof as to the formal execution of the will shall be made de novo. In reHedgepeth, 150 N.C. 245; In re Thomas, 111 N.C. supra, 416. True, the witness D. E. Hinson testified that Mr. Watson brought this will (Exhibit A) to him, "all fixed up," and "spoke of it as his will," and this undoubtedly is a relevant circumstance; but the statute seems to require that, when the will purports to be signed by the testator himself, and only one of the subscribing witnesses is alive and competent, that some evidence should be introduced as to the handwriting of the testator or the genuineness of the signature. Without further reference to this feature of the case, we are of opinion that the propounders are entitled to a new trial of the cause by reason of the fact that from the form of the issues and the charge and rulings of the court, the execution of the second will (Exhibit B) has been allowed no effect whatever as to the validity of the first (Exhibit A). It is well recognized in this State that a will, properly executed, may so refer to another unattested will or other written paper or document as to incorporate the defective instrument and make the same a part of the perfect will, the conditions being that the paper referred to shall be in existence at the time the second will be executed, and the reference to it shall be in terms so clear and distinct that from a perusal of the second will, or with (80) the aid of parol or other proper testimony, full assurance is given that the identity of the extrinsic paper has been correctly ascertained. The principle is sometimes referred to as "The doctrine of incorporation by reference," and is very well stated by Chief Justice Gray inNewton v. Seaman's Friend Society, 130 Mass. 91, as follows "If a will, executed and witnessed as required by statute, incorporates in itself by reference any document or paper not so executed and witnessed, whether the paper referred to be in the form of a will or codicil, or of a deed or indenture, or of a mere list or memorandum, the paper referred to, if it was in existence at the time of the execution of the will, and is identified by clear and satisfactory proof as the paper referred to therein, takes effect as part of the will, and should be admitted to probate as such." While there are some discrepancies in the application of the principle to the facts of the different cases, this statement is in accord with the great weight of authority here and in other jurisdictions *Page 66 
in this country and in England, where the subject has been very much considered. Siler v. Dorsett, 108 N.C. 300; Bailey v. Bailey, 52 N.C. 44;Chambers v. McDaniel, 28 N.C. 226; Bullock v. Bullock, 17 N.C. 307;Thayer v. Wellington, 9 Allen, 85 Am. Dec., 761; Allen v. Maddox, 11 Moore P. C., 427; 14 English Rep. Reprint, 757; Smart v. Prujean, 6 Ves. Chan., 559; 1 Redfield on Wills, p. 262; Theobald on Wills, p. 50; 1 Jarman on Wills, 5 Am. Ed., p. 265. And the position, we think, should undoubtedly prevail in the present instance. In the opening clause of Exhibit B the declaration is, "I do make and declare this addition to my last will and testament, and this addition is in no wise to interfere with my former will," and, in the closing paragraph the language is: "I hereby appoint my beloved wife, Laura Hinson Watson, my lawful executrix of this addition to my former will, according to the true meaning of the same, but in no wise is my former will to be affected by this addition, but the said will to stand as atpresent intended." At the time of the execution of this later instrument, the testator said to one of the subscribing witnesses "that (81) he had made a will already and did not want this in any way to interfere with his former will," and the witness D. E. Hinson testified that Mr. Watson brought the first paper, Exhibit A, to him "all fixed," had the witness to erase the name of M. T. Hinson as executor, he having died, and insert the name of D. D. Hinson, and asked witness to put it away and keep it for him, as the witness had a more secure place for the purpose, and this the witness did, and handed same to propounder's attorney after Mr. Watson's death. The second instrument clearly refers to the one former will, and there is no evidence or suggestion that any other will had ever been made or prepared by or for the testator. On this record, therefore, we are of opinion that the references in Exhibit B to the extrinsic paper are sufficiently clear and definite to permit that parol or other proper proof should be received as to the identity of Exhibit A, and that a perusal of the second will and the facts in evidence dehors afford testimony of a kind and character to require that the question as to such identity should be determined by the jury. If, on a second hearing, this Exhibit A should not be declared a valid will, as an original and separate proposition, then, on the first or some issue properly responsive, the question should be decided whether Exhibit A is the "former will" referred to in Exhibit B, and has its identity been established by clear and satisfactory proof. In the appeal of W. J. Bryan, 77 Conn. 240, reported with an elaborate note in 68 L.R.A., p. 353, to which we were referred by counsel, while the principle of "incorporation by reference" is stated *Page 67 
in somewhat more exacting terms than in some of the other decisions, the doctrine is recognized as the basis of the Court's ruling. In that appeal the sum of $50,000 was given "in trust for the purposes set forth in a sealed letter which will be found with this will," and ChiefJustice Torrance, delivering the opinion, thus states the ratio decidendi
of the case: "There is not in the language quoted, nor anywhere else in the will, any clear, explicit, unambiguous reference to any specific document as one existing and known to the testator at the time his will was executed. Any sealed letter or any number of them, setting forth the purposes of the trust, made by anybody at any time (82) after the will was executed, and `found with the will,' would each fully and accurately answer the reference; and if we assume that the reference calls for a letter from the testator, it is answered by such a letter or letters made at any time after the will was drawn. The reference is `so vague as to be incapable of being applied to any instrument in particular' as a document existing at the time of the execution of the will." And like statement will serve to distinguish a recent case in our own reports of Freeman v. Shields, 158 N.C. 123.
All the authorities agree that, in order to a proper application of the principle, the paper referred to should be in existence at the time the valid instrument is executed; to hold otherwise would be to repeal the statutory requirements as to valid execution of written wills. An extrinsic paper could not be incorporated with the proper formalities unless it then existed. But the decision in any aspect should not control or affect the disposition of the present appeal when it appears, as heretofore stated, that the second and valid will makes clear and distinct reference to "my former will," directing further that said will is to stand as firstintended, and with no evidence or suggestion that there had ever been more than one such former will or any other paper of that character. Bryan v.Bigelow, 77 Conn. 604, reported with a full note in 107 Am. St., 64, simply hold that "the letter" referred to, having been properly rejected as a constituent part of the will, was not efficient as a declaration of trust, and has no bearing on the question presented on this record.
We are not inadvertent to the fact stated by the witness, that at the request of the testator, and just before he put away the first will, he erased the name of M. T. Hinson, who had been designated as executor, and inserted that of D. D. Hinson. Under our statute and decisions construing laws of similar import, if M. T. Hinson had been alive at the time, the effect of the erasure would or might have amounted to a partial revocation of the will, to wit, as to the designation of the *Page 68 
first named executor, but the insertion of the name of D. D. Hinson, not having been properly made or witnessed, would be inoperative. (83) The first named executor, being dead at the time, the erasure of the one name and insertion of the other is without any effect on the instrument; the result being that, if Exhibit A is properly established, the testator would have died testate as to the property disposed of therein, but without naming an executor. Revisal, sec. 3115; In re Shelton's Will, 143 N.C. 218; Bigelow v. Gillette,123 Mass. 102.
For the error heretofore indicated, the propounders are entitled to a
New trial.
Cited: Smathers v. Jennings, 170 N.C. 603.
(84)