IN RE WILL OF MISS LENORA FULLER, MRS. BETTIE A. BARNWELL
AND MRS. SARAH M. BURTON.

(Filed 22 April, 1925.)

**1. Appeal and Error — Objections and Exceptions — Briefs — Rules of Court.**

It is necessary that exceptions appearing in the record on appeal be mentioned in appellant's brief, with reason or argument to support them, to entitle them to be considered by the court, for otherwise they are taken as abandoned. Rule of Court, 185 N. C., 798.

**2. Wills—Execution—Witnesses—Statutes—Signing by Testator.**

The requirements of C. S., 4131, as to the signing of the witnesses to a will in the testator's presence and at his request, must be met in order to a valid will, and testimony of the witnesses to a joint will of three persons that each of them requested each witness to sign, who accordingly did so in the presence of each testator, and so situated in plain view that each of the testators could plainly see them sign, is sufficient, and it is unnecessary that all of the testators should have signed at the same time, but it is sufficient if they did so on different occasions, under the circumstances required by the statute.

**3. Same—Evidence—Questions for Jury—Cross-Examination—Burden of Proof.**

Where the direct testimony of the witnesses to a will is sufficient for its validity under the provisions of our statute, C. S., 4131, and on cross-examination its force is weakened so as to leave a doubt of its sufficiency, the issue is for the determination of the jury, with the burden of proof on the caveators.

APPEAL by caveators from *Finley, J.*, and a jury, at December Term, 1924, of CASWELL.

The issue submitted to the jury and their answer thereto is as follows:

"Is the paper offered by the propounders and every part thereof the last will and testament of Bettie A. Barnwell, Sarah M. Burton and Lenora Fuller? Answer 'Yes.'"

Upon the verdict, the court below rendered the following judgment: "Now, therefore, it is ordered and adjudged and decreed by the court that the paperwriting offered by the propounders and every part thereof is the last will and testament of the said Sarah M. Burton, Bettie A. Barnwell and Lenora Fuller; and it is further ordered, adjudged and decreed by the court that the caveators pay the costs of this action to be taxed by the clerk."

The caveators excepted and assigned error to the foregoing judgment, made numerous other exceptions and assignments of error and appealed to the Supreme Court. The other necessary facts and the material assignments of error will be considered in the opinion.

*P. W. Glidewell, T. J. Gold for propounders.*

*John Hall Manning, Carroll & Carroll and W. B. Horton for caveators.*

CLARKSON, J. Miss Lenora Fuller, Mrs. Bettie A. Barnwell and Mrs. Sarah M. Burton, of Caswell County, N. C., being tenants in common with the heirs at law of John Thomas, deceased, made and executed what purported to be their last will and testament, a joint will giving and devising to their nieces and nephew their interest in certain lands in Caswell County. Mrs. J. B. Thomas was named executrix of the will.

Of the above named parties, Lenora Fuller died in 1920, Bettie A. Barnwell in 1923, and Sarah M. Burton in May, 1924. On 16 June, 1924, Mrs. J. B. Riggs (formerly Mrs. J. B. Thomas) presented to the clerk of the Superior Court of Caswell County for probate in common form a joint will of the three above named parties, and the same was admitted to probate in common form by said clerk. Thereafter, and in August, 1924, certain parties who would have taken certain interests in the property left by the three makers of said will, filed a caveat and in said caveat set up as grounds for declaring said will void charges of undue influence, lack of mental capacity, and that the will was not executed according to law.

The concluding part of the will and attestation clause is as follows:

"In witness whereof we, Bettie A. Barnwell, Sarah Burton, Lenora Fuller, hereunto set our hands and seals this 16th day of November, 1911.

BETTIE A. BARNWELL.
SARAH M. BURTON.
LENORA FULLER.

"Signed, sealed and published and declared by the said Bettie A. Barnwell, Sarah Burton and Lenora Fuller to be their last will and testament, in the presence of us, who at their request and in their presence, of each other do subscribe our names as witnesses thereto.

J. L. WARREN.
W. H. WARREN."

Although the caveators have numerous exceptions and assignments of error in the record, in their brief they say: "While the caveators rely upon all their exceptions from 1 to 14, inclusive, waiving none of them, they prefer to discuss them together as an appeal only from the judgment of the court, as being contrary to law and against the evidence in

the case, and especially as to the legal execution of the script propounded as a valid will under our statute, C. S., 4131, which is mandatory as to how a valid will must be excuted."

"Exceptions in the record not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned by him." Rules of Practice in the Supreme Court, 185 N. C., 798 (part of rule); *In re Westfeldt,* 188 N. C., 705; *S. v. Godette,* 188 N. C., 498.

Caveators confine their assignment of error to the single proposition: "Caveators contend that this will is absolutely void, for that it has not been executed according to the statutory requirements as laid down in C. S., 4131, Rev., 3113, Cyc., Vol. 40, p. 1097C."

The material part of C. S., 4131, to be considered in the determination of this case is as follows:

"No last will or testament shall be good or sufficient in law to convey or give any estate, real or personal, unless such last will shall have been written in the testator's lifetime, and signed by him, or by some other person in his presence and by his direction, and subscribed in his presence by two witnesses at least, no one of whom shall be interested in the devise or bequest of the estate, except as hereinafter provided," etc.

(1) The will must be in writing.

(2) The will must be signed by the testator or by some other person in his presence and by his direction.

(3) Subscribed in his presence by two disinterested witnesses at least.

It is admitted that the will was in writing, actually signed by the three alleged testatrixes, and the witnesses disinterested.

The contest is over the fact, did the two witnesses subscribe the will as witnesses thereto in the presence of the three alleged testatrixes? If the witnesses did, the will is valid under the statute; if they did not the will is void.

It is not necessary that the testatrix should have signed the paper as her will, in the presence of witnesses, provided she afterwards acknowledged it before them. *Burney v. Allen,* 125 N. C., 314; *In re Bowling,* 150 N. C., 507; *In re Herring's Will,* 152 N. C., 258; *In re Cherry's Will,* 164 N. C., 363.

*Walker, J.,* has thoroughly gone into the whole matter, *In re Will of Margaret Deyton,* 177 N. C., 503. We quote in part: "It is not required that subscribing witnesses should sign in the presence of each other: *Watson v. Hinson,* 162 N. C., 72; *Collins v. Collins,* 125 N. C., 104; *Eelbeck v. Granberry,* 3 N. C., 232; Rev., sec. 3113, nor is it necessary that the will should have been attested in the same room, provided the witnesses signed it, where the testator could see them do so; that is, could see them sign the very paper that she had signed, so

as to prevent the substitution of the genuine paper for another and spurious one. It was held in *Graham v. Graham,* 32 N. C., 219 : 'A will is well attested by subscribing witnesses when, though not in the same room with the testator, they are in such a situation that the testator either sees or has it in his power to see that they are subscribing, as witnesses, the same paper he had signed as his will. Where the supposed testator could only see the backs of the witnesses, but not the paper they were subscribing : *Held,* that the paper-writing was not well attested as a will.' See, also, *Cornelius v. Cornelius,* 52 N. C., 593 ; *Bynum v. Bynum,* 33 N. C., 632. 'Generally the witnesses are not required to subscribe the will at the express request of the testator. He need not formally request the witness to attest his will as the request may be implied from his acts and from the circumstances attending the execution of the will. Thus a request will be implied from the testator's asking that the witness be summoned to attest the will, or by his acquiescence in a request by another that the will be signed by the witnesses.' Thompson on Wills, 449 ; *In re Herring's Will,* 152 N. C., 258 ; *Burney v. Allen,* 125 N. C., 314 ; *In re Cherry's Will,* 164 N. C., 363. Testator must have seen the witnesses, or have been able to do so at the time of the attestation in the position he then was. *Jones v. Tuck,* 48 N. C., 202."

In *Shell v. Roseman,* 155 N. C., 94, it was said : "We are not inadvertent to the fact that the plaintiff made a statement, on cross-examination, as to a material matter, apparently in conflict with his evidence when examined in chief, but this affected his credibility only, and did not justify withdrawing his evidence from the jury. *Ward v. Mfg. Co.,* 123 N. C., 252 ; *Loggins v. Utilities Co.,* 181 N. C., 227." *Hadley v. Tinnin,* 170 N. C., 86 ; *Christman v. Hilliard,* 167 N. C., 5.

The law is plain. What are the facts? W. H. Warren, one of the subscribing witnesses, testified in part :

"I live at Hightower, and lived there in 1911; conducted a store there. In 1911 I knew Miss Lenora Fuller, Mrs. Bettie A. Barnwell, and Mrs. Sarah Burton. They lived a mile or a little further from the store. They requested me to witness their will, at the store, my place of business. At the same time they requested my father to witness it. My father and myself were present there when the will was witnessed and signed. (Witness handed a paper, and stated this is the will of Mrs. Barnwell, Mrs. Burton, and Miss Lenora Fuller.) They signed that will in my presence. They requested me to witness the will. Brought it there and asked me to witness it ; said this was their will. I did not read the will, but they asked me to witness it. They at the same time asked my father to witness it, and both witnessed it at the same time and place. My father and I were present with each other and in the presence of

the others when we witnessed it. I observed them at the time they signed the will and asked me to sign it. . . . The name, Mrs. J. B. Thomas, as executrix in the will is in my handwriting. I wrote it in there at these old ladies' request, at the time it was signed; it is in my handwriting in both places."

On cross-examination W. H. Warren testified: . . . "I cannot remember who was in the store the day they came there. I can remember these people."

"Q. All three at the same time? A. I can't say that; but I know one thing: they all signed it and my father and myself present. I cannot swear that all three came together. I cannot swear that all three signed it at the same time. I can swear that all three signed it at the same place. I don't remember which one came to my place first. I think two came together and one afterwards. That is my opinion. My father and I signed our names when they first came; we witnessed it on 16 November. I would not know the date except for the paper. I cannot pretend to tell the court and the jury which ones of the ladies came there together the first time. I saw all three sign it. I know their handwriting. I have seen them write before. I saw their writing a good many times. They brought letters to mail at the post office and did writing in the store, and did a good deal of business with me. They did not write a fine hand, but you could read it. The paper was lying on the counter when they signed it. The counter in my father's store. I don't remember which signed it first; I don't remember which signed it second; nor which one signed it third. My father and I signed it then and there. They brought the paper there and told us that it was their will and wanted us to witness it, and we did, and by request they asked me to put Mrs. J. B. Thomas' name in it. All three asked us to do it; asked us to witness the will.

"I don't remember that all three signed it at one time. I don't remember all signing it at one time, but I do remember they asked us to sign it. We seen them sign it. I don't remember about their sitting in a chair. I went to the desk and got a pen and ink. When they signed it, they gave it to us and asked us to put it in the safe, and later they came and got it. We put our names on it, the 16th of November, I think that was the day. I don't know that they were looking at my pen when I put my name there. I do not know that they even saw the paper when I put my name to it; I do not know that they saw the will at the time I put my name on it. I do know it was in their presence, but I do not know whether they were looking straight at us or not; they asked us to witness it. My father put it in the safe. I don't know how long we kept it there. They

33—189

came after it, but I don't know how long it was before they came after it, and don't know which one came after it. I remember they asked us to take care of it and we did, but I don't remember when they came for it and got it. No, sir I don't know which one came and got it. I don't know the year that the first old lady died. I can tell exactly at home."

Redirect examination: "At the time my father and I witnessed the will the old ladies were right there in the store. Nothing there to keep them from seeing it. No obstruction between us. I saw them sign first. I signed after.

"Q. The certificate here is: 'Signed, sealed and published and declared by the said Bettie Barnwell, Sarah Burton and Lenora Fuller to be their last will and testament in the presence of us and at their request and in the presence of each other, do subscribe our names as witnesses thereto,' is that what happened on that occasion?

"A. Bound to have been or I would not even have signed it if it had not been."

Recross-examination: "Q. You said awhile ago, you did not read it over?

"A. No sir. All I know is all three said it was their will. All three asked me to sign it. I did not know what was in there. I did not know what was on the paper."

J. L. Warren, the other subscribing witness, testified:

"I am the father of William Warren. Live at Hightower. Knew Miss Lenora Fuller, Mrs. Burton and Mrs. Barnwell. I have been knowing them practically all my life. I was engaged in business with my son in a store in 1911. These old ladies requested me to witness their will. (Paper handed to witness, and asked is that the paper?) A. Yes, sir, that is my signature. That is my signature, and the old ladies', all three of them.

"Q. So each and every one signed this will in your presence? A. Yes, sir; I do not think all three signed at the same time. Each one signed in my presence, and I witnessed it in their presence, I do not know that all three were there at the same time.

"Q. You do not say they were not, you just say you do not recollect it? A. I don't know, they said, 'I want you and Will to sign my will.' Each signed it in my presence and I witnessed it at their request.

"Q. The certificate says: 'Signed, sealed, published and declared by the said Bettie A. Barnwell, Sarah Burton and Lenora Fuller to be their last will and testament, in the presence of us, and at their request and in the presence of each other do subscribe our names as witnesses thereto'—Is that what happened there? A. Why, the best of my knowl-

edge they did. That is my opinion. I would not have witnessed the will had I not thought so."

The substance of his weakened testimony is set forth in what he said on recross-examination: "No sir, I did not witness it but one time. Yes, sir, when the last one came my name was on there. I don't reckon she saw me put my name on there it was already on there. All three might have been there, but I don't think so. It has been a good long while ago."

On cross-examination, both subscribing witnesses to the will weakened as to whether all three were in the store at the same time, when they signed the will as witnesses. We do not set out all the evidence, but sufficient to show the conflict that the jury had to consider in arriving at a verdict.

Caveators did not object to the introduction of the will in evidence, but did object to the validity of it.

The witnesses to the will who signed the same had to testify to what occurred some 13 years before. Naturally their recollection as to certain details, as brought out on cross-examination, but material to the validity of the will, were hazy and weakened by time. We think the evidence sufficient to be submitted to the jury. The court below, on this aspect of the case, properly placed the burden of the entire issue on the propounders to satisfy the jury by the greater weight of the evidence. The court charged the jury as follows:

"Now, in this connection the court charges you that it is not necessary that the testator should sign the will in the presence of the witnesses, acknowledgment is sufficient. It is not necessary that the testator request the witnesses to sign, request by attorney is sufficient, or the request may appear from the circumstances. The witnesses must sign in the presence of the testators, and as a rule the testator must actually see or be in a position to see not only the witnesses, but the will itself at the time of the signing, and where he could see the backs of witnesses, not the paper, it is not a good attestation. It may be shown from the location of the objects, furniture in the room, etc., that the testator could have seen the witness who signed the will. The witnesses need not sign in the presence of each other."

From a careful study of the charge of the court below, we think the issue of fact and the law arising thereon was carefully submitted to the jury, and the contention fairly given. We can find in law,

No error.