In the Matter of the Will of T. M. FRANKS.

(Filed 14 December, 1949.)

**1. Wills § 6—**

It is not necessary that testator sign his will in the presence of the attesting witnesses, but if he does not do so he must acknowledge his signature either by acts or conduct.

**2. Wills § 7—**

It is not required that subscribing witnesses sign same in the presence of each other but they must sign simultaneously with or subsequent to the signing of the instrument by testator.

**3. Wills § 24—**

Testimony of one subscribing witness to the effect that he signed the instrument at the request of testator simultaneously with the testator, and testimony of the other that when he signed same it had already been signed by testator, together with testimony that testator stated to the witnesses that the instrument was his will and requested them to sign same, *is held* sufficient to show formal execution of the will, G.S. 31-3, and to support the charge of the court thereon.

**4. Wills §§ 22, 25—**

The burden of proof on the issue of mental capacity is on caveators, and therefore an instruction to the effect that if the jury should find from the greater weight of the evidence that the will had been executed in conformity with law to answer the issue of *devisavit vel non* in the affirmative "unless the evidence satisfies you that at the time" testator did not have testamentary capacity, is not error.

**5. Wills §§ 23b, 23c—**

Testimony that some three years prior to the execution of the will attacked on the ground of undue influence and mental incapacity, testator had executed an instrument making practically the same disposition of his property, is competent upon the issue of mental capacity and undue influence.

**6. Wills § 23c—**

The exception to the exclusion of testimony of a witness that the general public thought the testator was influenced by propounder to make the will is without merit when the witness also testifies to the effect that he did not know it to be a fact that testator was so influenced.

**7. Same—**

Where caveators introduce evidence to the effect that propounder, prior to the execution of the will, had been given certain property by his father, the testator, it is competent for propounder to introduce a written statement executed by his father, duly identified, to the effect that propounder had paid full purchase price for the property in question.

**8. Wills §§ 23b, 23c—**

The fact that testator devises his property to one child to the exclusion of others, or to strangers in blood to the exclusion of blood kin, is competent to be considered with other evidence on the question of mental capacity and undue influence. But in the present will the testator explained his reason for leaving the greater portion of his property to one of his sons, and therefore testimony that testator had no reason for a disproportionate distribution of his estate was properly excluded.

**9. Wills §§ 21c, 25—**

Instructions to the jury to the effect that undue influence need not necessarily involve moral turpitude or even bad or improper motive, but that it is such influence by fraud or force or both as to amount to a substitution of the will of the influencing party for that of testator, *is held* without error.

**10. Same—**

Instructions on the issue of undue influence to the effect (1) that whether it was exerted by the beneficiary or by any other person in his behalf is a deduction to be made by the jury from all the evidence, (2) that mere persuasion would not render a will void in the absence of imposition or fraud, and (3) influence gained by kindness and affection is not undue influence even though it induced testator to make an unequal and unjust disposition of his property, if such disposition was voluntarily made, *held* without error.

Appeal by caveators from *Stevens, J.,* at May Civil Term, 1949, of Wake.

Issue of *devisavit vel non* decided in favor of propounder.

T. M. Franks died in February, 1948, leaving a last will and testament dated 12 September, 1940, which was duly admitted to probate in common

form in Wake County. The widow of the testator and all his children and grandchildren, except his son, David Preston Franks, chief beneficiary under the terms of the will, caveated the will and it was propounded for probate in solemn form. Four issues were submitted to the jury and answered as follows:

"1. Was the paper writing propounded, dated the 12th day of September, 1940, executed by T. M. Franks, according to the formalities of the law required to make a valid last will and testament? Answer: Yes.

"2. At the time of signing and executing said paper writing did said T. M. Franks have sufficient mental capacity to make and execute a valid last will and testament? Answer: Yes.

"3. Was the execution of the paper writing, propounded in this cause, procured by undue influence, as alleged? Answer: No.

"4. Is the said paper writing referred to in Issue No. 1, propounded in this cause, and every part thereof, the last will and testament of T. M. Franks, deceased? Answer: Yes."

From judgment on the verdict, the caveators appeal and assign error.

*Bickett & Banks for propounders.*
*Simms & Simms for caveators.*

DENNY, J. The grounds relied upon by the caveators in the trial below were non-execution, mental incapacity and undue influence.

The caveators except and assign as error the following portion of his Honor's charge: "Now, Gentlemen, if this evidence satisfies you by its greater weight that Mr. T. M. Franks did sign this paper in the presence of Mr. Johnny Murray and Mr. F. T. Carroll, and asked them to sign it as subscribing witnesses and he also signed it, and has further satisfied you by its greater weight, the burden being upon Mr. D. P. Franks, that they were told by him that he had signed the paper and that he requested them to sign it and that they signed as subscribing witnesses, that all of these witnesses were requested to sign by him as subscribing witnesses and they all signed as such in his presence and at his request, then that would constitute what the law calls a formal execution of the paper writing and under those circumstances, nothing else appearing, if the evidence satisfies you that the requirements, as I have indicated them, of the law, were complied with, then you would answer the issue Yes, the first issue, unless the evidence satisfies you that at the time he made the will he did not have mental capacity, what is known as testamentary capacity, that is, that the execution was procured by undue influence."

This assignment of error challenges the sufficiency of the evidence to show that T. M. Franks executed his will according to the formalities required by law.

Johnny Murray and J. T. Carroll, the subscribing witnesses, each testified that he signed the purported will of T. M. Franks, at his request and in his presence, but not in the presence of each other.

J. T. Carroll testified that Mr. T. M. Franks requested him a time or two to stop by in passing, "that he had a paper he wanted to get me to sign, so I stopped in, and he brought the paper out. He told me what it was, and I signed it in his presence." Later in the trial this witness was recalled, and counsel for propounder asked this question : "I don't recall whether I asked you or not, but please state whether or not the purported will of Mr. Franks was signed by him at the time you signed it." Answer : "Yes, it was."

Johnny Murray testified, Mr. Franks requested him to come to his house, "that he wanted him to sign his will, and so he did, and he was in Mr. Franks' home, in the sitting room, the two were present and no one else. . . . Mr. Franks brought the paper in the sitting room and that he (the witness) signed it." In response to a question as to what statement, if any, Mr. Franks made concerning the paper, the witness said : "Well he told me that was the will he wanted me to sign. . . ." Thereafter, on cross-examination by counsel for the caveators, the witness, according to the record, testified "that he did not see Mr. Franks sign the paper, that it was already signed when the witness signed it; when the witness signed it, Mr. Franks' name was already on it."

It is not necessary for a testator to sign his will in the presence of the attesting witnesses. However, he must do so, or acknowledge his signature in their presence. This acknowledgment need not be in words, but may be by acts and conduct. And, while subscribing witnesses to a will must sign such instrument in the presence of the testator, it is not required that such witnesses sign in the presence of each other. *In re Will of Bowling,* 150 N.C. 507, 64 S.E. 368; *In re Herring's Will,* 152 N.C. 258, 67 S.E. 570; *Watson v. Hinson,* 162 N.C. 72, 77 S.E. 1089; *In re Broach's Will,* 172 N.C. 520, 90 S.E. 681; *In re Will of Deyton,* 177 N.C. 494, 99 S.E. 424; *In re Will of Johnson,* 182 N.C. 522, 109 S.E. 373; *In re Will of Fuller,* 189 N.C. 509, 127 S.E. 549; *In re Will of Kelly,* 206 N.C. 551, 174 S.E. 453; *In re Will of Etheridge,* 229 N.C. 280, 49 S.E. 2d 480.

In order to prove the formal execution of a will by subscribing witnesses, as required by G.S. 31-3, it must appear that the will was signed by the testator or some other person in his presence and by his direction, and subscribed in his presence by at least two witnesses. *Watson v. Hinson, supra.* And when the testator does not sign the will in the presence of the witnesses, the signature should be acknowledged by him. This acknowledgment, however, which may be inferred from the acts and

conduct of the testator (*In re Herring's Will, supra*) presupposes that the testator had signed his purported will prior thereto.

The law contemplates that the signing of a will by the testator shall precede the attestation, or that the testator and witnesses sign cotemporaneously in the presence of each other, so as to constitute one transaction. *Cutler v. Cutler,* 130 N.C. 1, 40 S.E. 698. There must be a signature to acknowledge or attest before there can be an acknowledgment or attestation. *In re Will of Pope,* 139 N.C. 484, 52 S.E. 235; *In re Will of Baldwin,* 146 N.C. 25, 59 S.E. 163; *In re McDonald's Will,* 219 N.C. 209, 13 S.E. 2d 239. *In re Will of Pope, supra, Hoke, J.,* speaking for the Court, said: "In construing the statute as to written wills, with witnesses, it is accepted law that the witness must *subscribe* his name to the paper writing *animo testandi,* in the presence of the testator, and *after* the testator has himself signed the same."

In this case, we have the testimony of the subscribing witnesses to the effect that the purported will was already signed when they subscribed their names as witnesses thereto. Carroll's testimony bearing on this point, is to the effect that the purported will of Mr. T. M. Franks was signed by him at the time he (the witness) signed it. And the other subscribing witness testified on direct examination, that he knew the handwriting of the testator, and on cross-examination he testified that when he witnessed the purported will "it was already signed . . . Mr. Franks' name was already on it."

This evidence, when considered in the light of the testator's conduct in procuring these neighbors to witness his will, and his statement to the witnesses that the instrument was his will, together with the fact that his name already appeared hereon, is sufficient to meet the requirements of the statute as to the formal execution of the will. Moreover, no question has been raised by the caveators, as to the genuineness of the signature of the testator.

Therefore, the above portion of the charge was not prejudicial to the caveators, and the exception thereto will not be sustained. On the other hand, if the jury had answered the first issue in favor of the caveators, the propounders might have shown error, since the court instructed the jury in sum and substance that if the testator had already signed the will when the witnesses subscribed their names thereto, the jury was required to find that the testator told the witnesses at the time they witnessed the will that he had signed it. The acknowledgment of his signature in words, as heretofore pointed out, is not necessary, but may be inferred by the acts and conduct of the testator. *In re Herring's Will, supra.*

The caveators further complain of the instruction on the first issue because his Honor added these words: "Unless the evidence satisfies you that at the time he made the will he did not have mental capacity, what

is known as testamentary capacity, that is, that the execution was procured by undue influence." The burden on this issue was on the propounder, and the instruction was not prejudicial to the caveators.

Exceptions 4 through 21½ and 23 and 24, are directed to the admission of the testimony of Mr. Sam Morris, who prepared a will for the testator in 1937, and redrafted the instrument at the request of the testator in 1940, making certain minor changes therein, none of which, according to the testimony, affected or in any way changed the devise now under attack. And the substance of Mr. Morris' testimony is to the effect that in 1937 he drew a will for Mr. Franks; that Mr. Franks gave him all the information he had in drafting the will and that the devise to Preston Franks was identical in both instruments. The evidence was admissible on the issue as to mental capacity and as to undue influence. *Ruffin, C. J.,* in speaking for the Court, in *Love v. Johnston,* 34 N.C. 355, said: "Minutes for a will are common evidence of capacity and the *animus testandi;* and letters, or verbal declarations, containing expressions of preference for particular persons, or importing a voluntary purpose of making particular dispositions, are the ordinary means of rebutting the imputation of undue solicitation or influence."

These and other exceptions challenging the admissibility of evidence bearing on the mental capacity of the testator to execute a will on 12 September, 1940, are without merit. The evidence is overwhelmingly in favor of an affirmative answer to the issue, relating to the mental capacity of the testator at the time he executed his will. As a matter of fact, the evidence offered by the caveators alone is sufficient to sustain the verdict of the jury on this issue.

Exceptions 1 and 2 are directed to the refusal of the court to admit the testimony of a witness as to what the community generally thought as to whether or not Mr. Franks was especially influenced by his son Preston from time to time. The witness, if permitted to answer, would have said: "The general public thinks he was persuaded to make the will." However, the witness in answering for himself, as to whether he thought he was especially influenced by his son Preston, said, "I don't know that to be a fact." *Myatt v. Myatt,* 149 N.C. 137, 62 S.E. 887. The exceptions are without merit.

The caveators except and assign as error, the ruling of the trial judge in permitting the propounder to introduce and read in evidence a paper writing which had been duly identified, which is as follows:

"To whom it may concern:

"Since it has been intimated that I gave my son, Preston, his present home at McCullers and since the assertion is untrue, I desire to state the facts about the matter.

"I did bid the place in for my son, Preston, for the sum of $4,000.00 dollars. I put one thousand $1,000.000 dollars in the place of my own money and Preston put one thousand $1,000.00 dollars of his own money in the place. We then jointly borrowed two thousand $2,000.00 dollars from the Commercial National Bank of Raleigh, N. C. I took title to the place as a matter of safety, as I was responsible for three thousand $3,000.00 dollars of the purchase price. A little later Preston paid the bank its two thousand $2,000.00 dollars and a little later he paid me back the one thousand $1,000.00 dollars that I advanced on the place. I then gave my son, Preston, a clear title to the place for love and affection. I did not give my son, Preston, one dollar on the place. He, Preston, paid for it in full from his own money.

"I affirm the above statement is correct.

(s)   T. M. Franks   (Seal)

"Witness: J. T. Carroll
          Norwood Carroll."

The caveators contend that the witnesses did not testify as to the transaction referred to in this paper writing, and that its admission was highly prejudicial and tended to confuse the jury; that it had no proper place in the testimony relating to the trial. This exception might have merit were it not for the fact that the caveators undertook to show by the brother of the testator that the propounder had obtained the tract of land referred to in the above instrument, without consideration. The Rev. Jesse E. Franks testified, "that my brother Cad (T. M. Franks) bought land down there from my oldest brother, Nat, and I know Preston owned it later on. As to definitely hearing them say just when, I don't know. But Preston owned the land that Nat formerly owned and Cad bought it from Nat. I was told that Cad paid $4,000.00 for that property. It was in McCullers. That is where Preston lives. I never knew of Preston paying my brother anything at all for that place." In the face of this testimony, the exception is feckless.

A careful consideration of all the evidence adduced in the trial below would seem to support the conclusion that the caveators relied more upon the unnaturalness of the will, to show undue influence, than upon the conduct of the propounder. The propounder was devised the home place of the testator, subject to the payment of $4,000.00 for the benefit of several other children and grandchildren of the testator; and subject to the right of his second wife to occupy and use the house and out-buildings, including yard lot and all other buildings used by the testator and his wife, for her life or until she remarried. The testator set out in his will that he had sent certain of his children to college and that they were indebted to him; that one of them had received more than his share, but

he gave and bequeathed to them all the respective sums owed to him by them. Several witnesses testified the 113 acre farm devised to Preston Franks, the propounder, was worth from $10,000.00 to $15,000.00 in 1940.

The law presumes that every man has the mental capacity to make a will, and anyone alleging otherwise has the burden of showing the lack of such mental capacity. And where a testator devises the whole of his estate to one child, to the exclusion of other children, in the absence of some reasonable ground for such preference, or devises his property to strangers in blood, to the exclusion of his blood kin, such fact may be considered, with other evidence, on the question of mental capacity and undue influence. *In re Will of West,* 227 N.C. 204, 41 S.E. 2d 838; *In re Will of Redding,* 216 N.C. 497, 5 S.E. 2d 544; *In re Hardee's Will,* 187 N.C. 381, 121 S.E. 667; *In re Staub's Will,* 172 N.C. 138, 90 S.E. 119; *Ross v. Christman,* 23 N.C. 209.

However, the will under consideration gives a reasonable explanation as to why the testator disposed of his property in the manner set forth in the will. Therefore, we do not think it can be considered what in law is termed an unnatural will. *In re Will of Cooper,* 223 N.C. 34, 25 S.E. 2d 166.

The 45th exception and assignment of error is to the following portion of his Honor's charge: "One who is incapable at the moment of signing the paper of comprehending the nature and extent of his property, the disposition to be made of it and the persons who or should be provided for, is not of disposing memory, and if such mental condition be really shown to exist the will must fail and fall even though he may have a flickering knowledge that he is endeavoring to make a testamentary disposition of his property." The exception is without merit, this portion of the charge is in the exact language of the charge in *In re Craven's Will,* 169 N.C. 561, 86 S.E. 587, which was upheld by this Court.

The 51st exception and assignment of error is to the following excerpt from the charge: "Undue influence is defined to be an influence by fraud or force or both, and if its application to the making of a will signified that through one or both of these means the will of the decedent, and that is in this case T. M. Franks, was perverted from its free action and thrown aside entirely and the will of influencing party substituted for it, the fraudulent influence overruling or controlling the mind of the person operated on."

The caveators complain of the definition given of undue influence, particularly in view of the fact that the court had previously said: "That undue influence does not necessarily involve moral turpitude or even bad or improper motive," etc. *In re Will of Efird,* 195 N.C. 76, 141 S.E. 460; *In re Broach's Will, supra; In re Craven's Will, supra.* The charge as

given is substantially in accord with the definition given by *Manly, J.*, in the case of *Wright v. Howe,* 52 N.C. 412, and cited with approval in *In re Craven's Will, supra.* See also *In re Abee,* 146 N.C. 273, 59 S.E. 700. The exception cannot be upheld, for undue influence is a fraudulent, overreaching or dominant influence over the mind of another which induces him to execute a will or other instrument materially affecting his rights, which he would not have executed otherwise. Or, to put it another way, it means the exercise of an improper influence over the mind and will of another to such an extent that his professed act is not that of a free agent, but in reality is the act of the third person who procured the result. *Lee v. Ledbetter,* 229 N.C. 330, 49 S.E. 2d 634; *In re Will of Harris,* 218 N.C. 459, 11 S.E. 2d 310; *In re Will of Turnage,* 208 N.C. 130, 179 S.E. 332; *In re Will of Efird, supra; In re Will of Cross,* 173 N.C. 711, 91 S.E. 956; *Myatt v. Myatt, supra.*

The 52nd, 53rd and 54th exceptions and assignments of error are to the following parts of the charge: (1) "But while undue influence, as thus defined, may void a will, whether it was exerted by the beneficiary or by any other in his behalf is a deduction to be made by the jury from all the evidence." (2) "A will is not void because it has been obtained by persuasion; to make it void the persuasion must be undue and fraudulent." (3) "Influence gained by kindness and affection will not be regarded as undue if no imposition or fraud is practiced, even though it induces the testator to make an unequal and unjust disposition of his property in favor of those who have contributed to his comfort and administered to his wants, if such disposition is voluntarily made."

Here again the identical language complained of was approved in *In re Craven's Will, supra.* In *Gilreath v. Gilreath,* 57 N.C. 142, *Pearson, J.,* said: "A child is allowed to use fair argument and persuasion to induce a parent to make a will or deed in his favor."

There are many other exceptions to the charge, but when it is considered contextually, as it must be, it is in substantial accord with our decisions, and is free from prejudicial error.

Altogether the record contains 70 assignments of error. We have not undertaken to discuss all of them. However, a careful examination of each one of them, considered in connection with the entire record, leaves us with the impression that the case was fairly tried and no substantial or prejudicial error has been shown.

The verdict and judgment will be upheld.

No error.